## Joseph F. Smith and others v. James Power.

That the assent of the Federal Government, as a general rule, is essential to the validity of a title within the border and littoral leagues, is not an open question in this Court.

The only recognized exception to this rule is where a title in the reserved leagues has been issued under the specific authority of a decree of the Congress of the State of Coahuila and Texas. This exception to the general rule has reference to titles issued under the decree of the 26th March, 1834.

The colonization contract of Power and Hewetson, embracing littoral leagues, gave the assent of the Federal Government to the issuance of such titles only as were provided for therein, and could not be construed into assent to the location of any other grants within the limits of that colony; nor did such colonization contract have the effect to dispense with the assent of the Federal Government to the location within its limits, of grants not contemplated by it; and the only titles contemplated by that contract were the titles of colonists to their head-rights, and of the empresarios to their premium leagues.

Error from Jackson.

*J. F. Smith,* for plaintiffs in error.

*R. Hughes,* for defendant in error.

HEMPHILL, CH. J. The land sued for lies within the limits of the augmentation to the original colonial contract of Power & Hewetson, and among other objections to the title of plaintiff, it is urged that one of the essential requisites of such title was wanting, viz: the approbation of the supreme executive power of the Federal Government; and that consequently the title was void and would not authorize a recovery for the plaintiff.

This is the only objection we shall examine, for if this be valid, the judgment must be reversed, whatever be the character, as legal propositions, of the other objections which have been urged.

The title of the plaintiff purports to be for four leagues and three-quarters of land, the balance of twenty-two leagues purchased by Power & Hewetson from the Governor of the State of Coahuila and Texas. The consent of the Federal Executive to the location of this claim within the littoral leagues, does not appear on the face of the title, nor was it proven by evidence *aliunde*.

That such assent, as a general rule, is essential to the validity of a title within the border and littoral leagues, is not an open question in this Court. It was so decided in the cases of Goode v. McQueen's Heirs, 3 Tex. R. 241 ; Edwards v. Davis, Id. 321 ; Republic v. Thorn, Id. 499 ; Edwards v. Davis, 10 Id. 316. The only recognized exception to this rule is where a title in the reserved leagues has been issued under the specific authority of a decree of the Congress of the State of Coahuila and Texas. Such law having become a rule of property, and having been acquiesced in by the Congress of Mexico, no act of that body having declared it null and void, titles emanating under it must be respected by subsequent Governments and authorities, and cannot be held null and void for the want of assent by the Federal Executive. (Goode v. McQueen, 3 Tex. R. 258.) This exception from the general rule has reference to titles issued under the decree of the 26th March, 1834. But the title of the plaintiff can claim no benefit from this exception, as it was not issued and could not be issued under said decree ; nor was it granted under any other having like provisions, or any provision which directly authorized titles to issue to lands within the border or coast leagues of the State. But it is contended in a very ingenious argument by counsel for appellee, that the consent of the National Executive having been given to the colonial contract of Power & Hewetson within the littoral leagues, all restriction on grants of land within the designated boundary was entirely removed ; that all the operations provided for by the law of colonization might be carried on within such boundary, and all persons for whom provision has been made in said law may receive within said colony the ben-

efits to which they are by such law entitled; that inasmuch as by the colonization law the Mexican military and Mexican citizens were entitled to a preference in the distribution of lands, (Art. 10,) and as foreigners emigrating separately and at their own expense were authorized by Article 16th to annex themselves to any new settlement, and as Mexicans, by Article 24th, were entitled to lands by purchase, all these classes, having been provided for by the law of colonization, were entitled to locate their grants or concessions of lands within the limits of said colony, although by the terms of the contract the grant of lands and the privilege to make settlement, were extended only to specific classes of settlers, viz : colonists introduced, numbered and classed, or who should be classed as such.

The position assumed by appellee is more plausible than sound. No title can issue or be supported within the border or littoral leagues, unless with the sanction of both governments. Where they concur in authorizing a limited number of settlers or colonists to be admitted with designated boundaries in said leagues, the grants to such colonists will be valid ; but because titles are authorized to issue to a specified number of colonists, will that also authorize grants to others who are not colonists, who cannot be ranked as such, and who can consequently claim no benefit or right under a contract, the exclusive object of which was the introduction and settlement of colonists?

No doubt colonization contracts should be liberally construed, in support of rights claimed under such contracts. The consent of the Federal Executive to the contract, imparts efficacy to all titles fairly appertaining to such contract, as, for instance, the premiums to empresarios, the headrights to colonists, and the augmentations to such headrights. But when all of such titles have been issued, the contract has discharged the functions for which it was created. It has appropriated all the lands to which it can extend. The excess of lands within the colonial limits, not necessary for the colonial titles, and not applied to that purpose, remain vacant, and no title

can be acquired to them unless in the modes prescribed by law. If without the border or littoral leagues, the land can be granted by the State alone ; within, the assent of both governments is necessary to a valid title. The fact that two hundred titles are authorized to issue, will not *per se* authorize three hundred. If any over the two hundred are taken out, it must be by some proceeding or authority independent of the original grant or permission. The additional grant, to be valid, must within itself, and without reference to the original authority, contain the essential elements of title.

That a colonization contract cannot give efficacy to grants not appurtenant or incident to such contract ; that it can operate only on the lands required to satisfy the titles for which it provides ; that the assent of the Federal Government to such contract cannot legitimately extend to titles not specifically included in the contract; are propositions too well founded in reason and law to be successfully controverted. As propositions, they are applicable generally to such contracts.

But we are not left to general rules to ascertain in what light the land within the limits of the contract, not appropriated to colonial titles, must. be viewed. The 10th Article of the contract declares that the individual applications of the colonists for lands, and the premiums conceded to empresarios having been completed, the government alone can dispose of the vacant lands which may remain, in conformity with the laws. This is a declaration that the lands not comprised within the titles to the colonists or the premiums to the empresarios, are vacant, and the grant of them must, like the grant of any other vacant land, be in conformity with the laws regulating the subject matter ; and as the vacant lands within the littoral leagues can be granted only with the approbation of the Federal Government, so that consent must be given to the grant of vacant lands within this colony, or in other words, to the grant of any lands not included in the colonial titles.

There is nothing repugnant to reason, or at least to law, in holding that all titles to lands in the border or littoral leagues

must have the assent of the Federal Government; and that an assent to a title or class of titles cannot be inferred from the fact of such assent to another title or class of titles. Each title must be perfect in itself, or by reference to some general grant. Each must have the approval of the Federal Government, either separately or in the aggregate, as in approvals of empresarios contracts. The fact that the country was partially settled or colonized, is no reason why the vacant lands should be granted in any other than the mode pointed out by law. This restriction was extended to the coast region of Austin's colonies, and although many titles had been issued in that region under his first contract, in which there was no such restriction, yet when that was exhausted, he did not claim or suppose that under his subsequent contracts he had the right to further colonize the littoral leagues, until the direct assent of the Federal Government was received.

The title of the plaintiff, lying within the coast leagues, and not being a title to a colonist, or a premium to an empresario, or any title which by law can be classed as such, and not having otherwise the sanction of the Federal Government, is invalid, and will not authorize a recovery by plaintiff. The judgment is therefore reversed, and the cause remanded for further proceedings.

                                   Reversed and remanded.