Reversed and remanded.

---

C. G. WORD AND OTHERS v. JOHN F. McKINNEY, ADMINIS-
TRATOR.

The doctrines laid down in Hardy v. De Leon, 5 Tex. R., 211, and Kilpatrick v. Sisneros, 23 Tex. R., 113, as to the effect of abandonment of the country and alienage of the grantee, upon titles to land acquired previous to a change of government, are cited and reaffirmed in this case.

Although it might be doubted whether a concession, under the colonization laws, to a party who died before the completion of the title, was an authority to the alcalde to issue the title of possession to his widow, it was competent for the governor to validate the title thus issued, by his subsequent ratification of the action of the alcalde, and confirmation of the title, though it had been issued without authority.

It was the constant practice of the authorities entrusted with the granting of lands under the former government of the country, to perfect incipient or inchoate titles by a final act of confirmation.

Where the original is an archive of a foreign government, and there is no means of testing its genuineness or the verity of the proffered testimonio, by any record or other evidence within the limits of our own jurisdiction, extrinsic evidence of the execution or genuineness of the instrument offered must be produced.

Quære—Whether it is necessary to prove the execution of the testimonio, if the protocol is an archive of the general land office?

APPEAL from Goliad. Tried below before the Hon. Edmond J. Davis.

Suit instituted by Maria Jesus de Leon de Manchola, the widow of Rafael Manchola, on the 17th of May, 1850, against C. G. Word and others; action, trespass to try title for two leagues of land.

The plaintiff died before the trial, and John F. McKinney was appointed administrator of her estate, and prosecuted the suit. The title relied on by the plaintiff was a grant to Rafael Manchola of four leagues of land, which was incomplete at the time of his death; the title of possession whereof was issued to the said Maria Jesus de Leon de Manchola as his widow, and said possessory title was ratified subsequently by the Governor on April 25th, 1835.

The plaintiff introduced as evidence the testimonio to the said Maria Jesus de Leon de Manchola, with the accompanying documents, as follows: The petition of Rafael Manchola, February 12th, 1829, for four leagues of land, which he solicited on the terms prescribed by the colonization law of the State.

Its reference to the ayuntamiento of Goliad to report according to article 17th of the colonization law, dated Leona Vicario, February 14th, 1829.

Report as to the locality, and the qualifications of the applicant.

The concession made at Leona Vicario, on the 5th February, 1830, of four leagues, as an augmentation headright; and commissioner general directed to give possession.

Petition of Rafael Manchola 8th October, 1830, that the alcalde of Goliad may give possession.

Corresponding direction to the alcalde. Petition by Maria Jesus de Leon de Manchola, as the widow of the original applicant to the alcalde, that possession be given to her according to the concession to her husband. Dated October 2d, 1833.

The order of survey, dated October 3d, 1833, by the alcalde, on the petition of the widow. Report of the surveyor.

Title of possession for four leagues to the widow from Miguel Aldrete, sole constitutional alcalde for the town of Goliad, and

---

Word v. McKinney.

---

commissioner to distribute and give possession of vacant land within that jurisdiction.   Dated October 7, 1833.

Before producing the foregoing testimonio, the plaintiff proved the handwriting of Aldrete, the alcalde acting as commissioner, and of the witness, Vasquez, subscribed thereto.   And the plaintiff offered in evidence, appended to the testimonio, the following ratification of the title as to two leagues, to-wit:

```
*  ·  ·  ·  *
.  L. S.  .
*  ·  ·  ·  *
```

"Executive Department of the Free State of Coahuila and Texas, Book A, No. 161, Fol. 147, frt., Monclova, April 25th, 1835.

"The possession of two leagues of land, given by the alcalde commissioned of the town of Goliad, citizen Jose Miguel Aldrete, according to the foregoing document, is ratified by the government, provided they do not affect the rights of other parties. Let this be returned to the party interested for the suitable purposes."

(Signed,)                              " VIESCA.
(Signed,)                              ".J. MARIANO YRALA,
                                          " Secretary."

No proof was offered as to the genuineness of the above recited document, for which reason, and " that there was no authority for making such ratification in any case, and if made, was void because of the nullity of the testimonio," the defendants objected to its introduction; which was overruled, and the instrument was admitted.

In the year 1837 Madam Manchola left the Republic of Texas and went to the State of Louisiana, where she remained three or four years; returned and went to Mexico; again returned to Texas, and again returned to Mexico, and still again returned to Texas, where she died.   It was contended, under the evidence on the subject by the plaintiff, that she had not voluntarily abandoned her residence in Texas, and by the defendants, that she had done so, and acquired one in Mexico.

The defendants asked the court to instruct the jury that if

they believed from the evidence, that she at any time before the institution of this suit, voluntarily fixed her permanent residence in Mexico, after it became a country foreign to Texas, by her revolution, that she lost what right she may have acquired under the testimonio, and the plaintiff cannot recover. Which the court refused.

They also asked an instruction, that the testimonio of the plaintiff's intestate is void for want of authority in the alcalde to issue it under the concession to Rafael Manchola; and is not validated by the document annexed thereto, purporting to be a ratification by the Governor of Coahuila. Which was also refused.

Verdict and judgment for the plaintiff for the land sued for.

*Pryor Lea*, for the appellants—If the title of Madam Manchola can be sustained, it must be on one of two grounds—either that she had a community interest in a vested right, or that she had a right by succession from her husband.

The first alternative presents a controlling question, whether the title passed to Rafael Manchola by the concession. The negative is established by the principles uniformly asserted by this court, with particular reference to colonial and headright titles. (Trimble *et al* v. Administrator of Smithers, 1 Tex. R., 790; Webb *et als.* v. Webb, Administrator, 15 Tex. R., 274; Hamilton v. Menefee, 11 Tex. R., 718; Hart v. Gibbons, 14 Tex. R., 213; Morris v. Brinlee, 14 Tex. R., 285; Hancock v. McKinney, 7 Tex. R., 384.)

The foregoing cases are cited, and others might be added, to show controlling analogies against the title in question. The decided cases are not like the present in all respects, but they conduce to establish certain principles, which negative the right of Madam Manchola, and the authority of the alcalde to give her the testimonio.

The concession was merely a preliminary proceeding, and not a vested right. *Locus pœnitentiœ* pertained to each party during the life of Rafael Manchola. The consideration on his part was entirely prospective, for he was a Mexican inhabitant, and never paid anything, and otherwise never did any thing, to procure the

land, except to ask for it. The bounds of his claim were not defined, although they were specified in his petition, for they were rendered vague by the action of the ayuntamiento and the executive. Either from dissatisfaction, or from some other cause, the applicant never had any action on his concession.

\*        \*        \*        \*        \*        \*        \*

From the premises, which negative active consideration, and certainty of locality, and possession, the inference is plain, that Madam Manchola had no community interest at the time of her husband's death.

In the case of Hamilton v. Menefee, 11 Tex. R., 718, this court said, in substance, that the title of Buentello was good, at least, in equity, before the giving of his testimonio; but the elements of that title were full payment by most meritorious services, established possession, and express recognition of right in the empresario contract, so that the testimonio was only a form for the pre-existing substance of a perfect right. No colonial title, (it is believed,) has ever obtained a standing in court, when any essential element was wanting. The distinction is vital between the perfect and the imperfect, in substance. A community interest attaches on acquisition—but acquisition is title—and title against the government is substantial perfection. If any thing less could vest a qualified right, the smallest incipiency could, also, vest a right with additional qualifications, but nothing less can change the ownership, in a legal sense. It follows that Madam Manchola did not have a vested community interest in the imperfect claim of her husband; and in this aspect of the case, there being no vested equity, the testimonio is without authority.

The alternative aspect presents the question, whether Madam Manchola had any right by succession from her husband. This case is plainly distinguishable from one of ordinary headright with reference to the persons who might take. In a case of ordinary headright, the fixed facts determined the preliminary and equal right of acquisition in each head of a family, and a surviving husband or wife took title on individual right, and not on the former marital association. Every head of a family, as such, was entitled to procure an ordinary headright. Thus far, Madam Man

chola might have obtained a concession and testimonio without reference to any peculiar attributes, either of her husband or of herself; and, on a satisfactory showing to the governor of her own peculiar merits, she might have obtained an augmentation. But neither of these legal modes was adopted. The testimonio, therefore, must depend on the assumption and pretext of the alcalde, that a widow, as such, was entitled to take the benefit of her husband's mere concession for an undefined augmentation.

No such law of succession is known. But, on the contrary, and by the express terms of article 17, augmentations were to be made on peculiar circumstances, connected with particular persons, on special judgments of the governor. The idea would seem to be necessarily absurd, that such a grant, being an exception to a general rule, a favor on individual and personal attributes in part, could be appropriated by another person who might not have any such attribute, and without any judgment of the governor on the qualifications of the recipient. The one might be worthy of all favor, while the other might be utterly unworthy; and what might be well conceded to one person, might be denied to another, with great propriety. Moreover, if the circumstances preceding possession, as inducements for giving it, should become essentially changed, it could not be given at all. When the previously adjudicated preliminaries were not existing, the foundation of authority for giving possession would be removed. Where adjudicated personal attributes must constitute a consideration, its failure must abrogate the right to have a completion of an incipient executory arrangement.

From the premises, it follows conclusively that the alcalde had no authority to give the testimonio, neither on any community interest, nor on any right of a widow by succession, and, consequently, the pretended title was simply void.

From the foregoing conclusion, it appears that the District Court erred, both in refusing to give the instruction requested by the defendants, that the title was void, and in the given instructions by which the original title was sustained, as authorized by the concession.

II. A secondary and incidental question arises on the docu-

ment, called a ratification, which is appended to the testimonio, and purports to have been made by the governor, and authenticated by the seal of the State of Coahuila and Texas. There was no extrinsic proof of authenticity, but the seal, in appearance, was such as the law prescribes for the State seal.

The question is, whether that document has any force?

The first objection is, that the document is not proved. There is no presumption in favor of it, but the presumption is adverse to it, because it is a departure from common usage and from express law. By usage and law the testimonio is the end of the title, according to decisions of this court, already cited, and quite familiar. Such pretended ratification, therefore, is not an official but a private act, without authority, and it carries no intrinsic evidence of its authenticity. A seal, when used without official authority, affords no evidence.

But a second objection is, that this document is nugatory, even if really made as it purports, because the title was either good without such ratification or it was incapable of ratification. If the alcalde had authority to make the testimonio it needed no such aid, but if he did not have authority, the testimonio was merely void. The rule is universal, that competent authority may ratify or confirm irregular or defective grants which may have been imperfectly made by competent authority, but such grants as are absolutely void cannot be ratified nor confirmed, there being no legal foundation for such action, and the case involving an entire creation. Even the Spanish law expressly recognizes this principle, so that the arbitrary sovereign cannot ratify a void grant, for the palpable reason that there is no legal entity on which the decree can take effect. But the bad policy of such a mode of action is given as another reason. And, in a government of distributed and defined powers, a further and conclusive reason is found in the want of authority in any officer, even the highest, to depart from the prescribed sphere of subjects and modes for his action.

Notwithstanding the pretended ratification, the testimonio remained void, and the court should have instructed the jury that the plaintiff had no title.

*McKinney*, for the appellee—The first objection is that "the testimonio to Madam Manchola was void for want of authority in the alcalde to issue it under the concession to Rafael Manchola. And to that effect, appellant's counsel requested the District Court to charge the jury, which was refused, and in which the court was clearly sustained by the law and the facts.

The objection (the court will see,) is not that the officer had no jurisdiction or authority to act, but that he had no authority to act in the manner in which he did act. How or why the officer acted is not a matter to be inquired into by this court. It is enough to know the officer had authority to act, and that he has acted and issued the title which is shown in this case. There is no question as to the jurisdiction of the alcalde to act in the premises. The presumption is that the officer authorized by law to issue the title has done his duty and acted in all respects in conformity to law. (Jenkins v. Chambers, 9 Tex., 167.)

The officer having authority under the 17th article of the colonization law of 1825, to increase the quantity of land, was the judge of the qualifications of the applicant, and his decision was final, unless fraud be shown on the part of the grantee. (Same authority, 9 Tex., 167.) Here no attempt was made to show either *want of authority* in the officer to make the grant, or *fraud* on the part of the grantee in obtaining it.

Whether title issued to Madam Manchola, either on the ground that she had a community interest in a vested right, or that she had a right by succession from her husband, is not important; nor is it necessary to enquire whether the title passed to Manchola by the concession. The testimonio is the final title; and all enquiry as to the proceedings of the officer anterior to the issuance of the grant is precluded, when it appears (as in this case) the officer had authority the make the grant, and no fraud is charged on the part of the grantee. All the proceedings necessary to the grant are conclusive. (Stringer v. Lessee of Young, 3 Peters' R., 320; United States v. Arredondo, 6 Wheat., 729; Brown v. Jackson, 7 Wheat., 218.)

Under the colonization laws the wife was as much entitled to the bounty of the government as the husband, for the reason she

often paid as much for the land in the performance of onerous duties; and it was intended that the family should be the recipients of the bounty of the government collectively, and not individually. In the case of Jenkins v. Chambers, (9 Tex., 380,) the court say: The family is to be provided for: it is for them that the bounty is intended; and if the grant be made to accomplish this design, it fulfills all the purposes intended or contemplated by law.

The concession to Rafael Manchola was for four leagues—the grant to his widow is for two. She certainly was entitled to land, and she may have relinquished her claim to the other two; and if she were entitled to any land, the grant, in that event, could only be voidable; and a subsequent locator, having no equity at the date of the grant, could not attack the grant on that ground. (Maxcy v. O'Conner, 23 Tex. R., 234.)

As to the ratification of the testimonio by the governor, this was done by him in confirmation of the acts of the alcalde, and to show he had proceeded legally in the discharge of his official duty in issuing the title, and we must presume he had authority for his act; otherwise, we would have to presume that the governor and alcalde both united to swindle the government, which will not be done; but, on the contrary, that these officers had authority to do what they did do. The testimonio proved itself—it has the great seal of the State affixed by the proper authority.

What could have been the object of the governor in ratifying the act of the alcalde, but to do his duty both to the government and to the grantee? It could not have been to perpetrate a fraud on the government; for, if the alcalde had done so, it needed no act by the governor to ratify a fraudulent act of the alcalde.

It has not been shown that any positive law was violated by the governor, in attaching his ratification to the grant; and until that is done, the validity of the grant can not be questioned by appellants.

WHEELER, C. J.—On the question of the alleged abandonment of the country and alienage of the plaintiff, there is nothing in this case to distinguish it from the cases heretofore decided by

this court, in which that defence was held to be unavailing. (Hardy v. De Leon, 5 Tex. R., 211; Kilpatrick v. Sisneros, 23 Tex. R., 113, decided at the Galveston Session of 1859.)

It is insisted, for the appellants, that the title of the plaintiff was issued without the authority of law, and is void; and that no validity was imparted to it by the act of confirmation by the governor, of the 25th of April, 1835.

It may well be doubted whether the concession to Rafael Manchola was an authority to the alcalde to issue the title of possession to his widow. But it is not perceived that it was not entirely competent for the governor to validate the title thus issued, by his subsequent ratification of the action of the alcalde, and confirmation of the title, though it had been issued without authority. It would seem too plain to admit of question, that the power to grant must include the power to confirm a title. It was the constant practice of the authorities entrusted with the granting of lands under the former government of the country, to perfect incipient or inchoate titles by a final act of confirmation. It can not be doubted that the governor might have granted the land to Madam Manchola; and if so, it is difficult to comprehend upon what principle his power to confirm the title already issued, though invalid for the want of a previous authority in the officer, can be denied. It is a familiar principle in the law of agency, that a subsequent ratification is as effectual to give validity to the act done, as an authority previously confirmed. It is not perceived why that principle should not apply to a case like the present, when the exercise of the granting power is not 'restricted to the observance of any prescribed formality which is wanting. If it be not a question of compliance with any requisite formality, but of power in the officer, it can not be denied that the power which can grant can confirm a title.

But the admissibility in evidence of the act of confirmation was objected to on the ground that there was no evidence of its genuineness, and it is proper to decide upon its admissibility in evidence before pronouncing definitively upon its legal effect. The question is, whether, coming from the possession of the interested

party, the instrument proves itself by its mere production in court.

There is no doubt that it would have been received in evidence in the courts before the change of government; and if it were an entirely new question in this court, it might be contended, with much force, that our courts should officially take notice of the authentic acts of the authorities of the former government. But the question was considered by this court at an early day, and the opinion was entertained, and has been constantly acted on in practice, that, in order to the prevention of frauds, some evidence ought to be produced of the genuineness of such instruments before they are received in evidence. Thus, in Paschal v. Perez, (7 Tex. R., 338,) in treating of the admissibility of a testimonio or copy of an instrument which remains an archive of a now foreign government, as is the case here, Chief Justice Hemphill said: "If testimonios or copies are admitted without restrictions, a wide door is opened for the admission of fraudulent or forged titles. Their falsity and fictitious character cannot be tested by original records or evidence within the limits of our own jurisdiction." (Id., 364.) Again, it is said: "Had the original testimonio, or second original as it is sometimes called, been produced, and the signature proved, it would have been, of itself, at least *prima facie* evidence of title." (Id., 363.) It was held in the same case, and again in the case of Edward v. James, (Id., 372,) that the testimonio, or second original title to lands, was within the provision of the registry act of 1836, and might legally be admitted to record, upon proof of the hand-writing of the signer. In DeLeon v. White, (9 Tex. R., 600,) proof of the execution of the testimonio was treated as being requisite. The opinion appears to have been entertained at an early day, and to have been constantly acted on in practice, that some extrinsic evidence of genuineness ought to be produced to admit these instruments in evidence. And in all the numerous cases which have come before this court for adjudication, some such evidence has been produced. In no case has it been held that the instrument proves itself, without the aid of any extrinsic circumstance tending to

prove its genuineness. If, in any case, such evidence should be required, it should be the present. It is not the case of a concession addressed to an officer, whose province it was to pass upon its genuineness, and to act upon it by extending the title It derives no aid from a recognition by any other officer of the government. It is itself the final act imparting validity to the title. It does not come from the official custody of any officer of the present government, but from the possession of the interested party, more than twenty years after it purports to have issued from the office of a since foreign government, where the original is supposed to remain. . There is no evidence of its ever having been deposited, subject to examination, in any office of this government. If there is any case in which, in order to guard against frauds, some evidence of the genuineness of the document ought to be required, it is the case of an instrument offered under circumstances like the present. And we think the views which the court has hitherto entertained upon the question, and the uniform practice conforming to those views, a sufficient warrant for holding that such evidence ought to be produced. There is less reason for requiring it where the original is an archive of the general land office. But no case has come under my observation where the party relying upon the testimonio, instead of a land office copy of the original, has not seen proper to prove the execution of the testimonio, though the protocol was an archive of that office. Whether that be necessary, may be decided when the question is presented. For the present, it will suffice to say that where the original is an archive of a foreign government, and there is no means of testing its genuineness, or the verity of the proffered testimonio, by any record or other evidence within the limits of our own jurisdiction, we think it safer to adhere to the practice which has heretofore obtained, and require the production of some extrinsic evidence of the execution or genuineness of the instrument. We are, therefore, of the opinion that the court erred in overruling the objection to the admission of the instrument in evidence. As this case must be remanded for a new trial, it may be upon other additional evidence to that produced upon the former trial, and it may not become necessary, we think proper to

abstain for the present from the expression of an opinion upon the other questions in the case.

The judgment is reversed and the cause remanded.

Reversed and remanded.