## JOHN H. WOOD v. JOHN WELDER.

1. TESTIMONIO—RECORDS. A testimonio to be admitted in evidence must be proved, and to be admitted to record must have the due authentication attached. A record without such certificate of authentication has no effect and is not *duly recorded.*
2. BORDER AND COAST LEAGUES. The consent of the Federal Executive was essential to the validity of grants within the ten border leagues.
3. Trevenio v. Cavasos, 35 Texas, 133, discussed.
4. LIMITATION DURING WAR. The court said : " If there is anything that " restrains the people of a State from declaring the effect of a state of " war in suspending the statutes of limitation, it has not yet been so ad- "judicated, so far as we are advised, by the courts of the United States, "nor has it yet been made to appear to our satisfaction."
5. Bender v. Crawford, 33 Texas, 745, concurred in.
6. POWER OF ATTORNEY—EVIDENCE. It is not error to exclude a deed offered in evidence made by an attorney whose power is of subsequent date to the deed, but which does not refer to or ratify the deed.
7. VERDICT—CERTAINTY. Where several tracts are sued for in trespass to try title, and are described in the petition by the date and name of the patentees and number of acres in each tract, a verdict for plaintiff less two of the tracts, described by name of the grantee, is sufficiently certain to allow of a judgment thereon.
8. LIMITATION. In absence of proof of the date of the location and survey of the land sued for, limitation will only run from the date of the patent in favor of defendant in possession under another title.

APPEAL from Nueces.  Tried below before the Hon. T. C. Barden.

*Lovenskiold & McCampbell* and *Pat. O'Docharty,* for appellant.

The grant of five and one-half leagues of land, relied on by John Welder, was part of an eleven league grant to Power and Hewitson, located within the ten littoral leagues of the coast, without the consent of the executive of the General Government of Mexico. This grant has been passed upon so repeatedly by this court, that it would appear at this day to be unnecessary to produce authorities to prove its nullity. (Sarah D. Smith *v.* Tomasa Power, executrix, 23 Texas, 30 ; Plummer *v.* Tomasa Power *et al.,* 29 Texas, 6 ; Lambert *et al. v.* Weir, 27 Texas, 359 ; 24 Howard, 434 ; 26 Texas, 180.

In support of the fourth assignment, John Welder, for the purpose of sustaining his plea of five years' limitation, offered as a "recorded deed" a testimonio of this grant, which appears to have been placed upon the records of Refugio county without authentication, and was allowed by the court, notwithstanding the objection of appellant, to read a copy from said record, without accounting in any manner, as required by law, for the absence of the original testimonio.

. The copy from said record was not filed previous to the trial, and no notice was given of the filing, as by statute required. This testimonio bears no evidence of having been proven up ; it is not even marked filed for record—only bears the mark, " Recorded February 14th, 1840," not even signed by the clerk.

It is believed that it was recorded in violation of the Act of 1839 (Paschal's Digest, Article 4974), or Act of February 5th, A. D. 1840 (Paschal's Digest, Article 4975). The evidence upon which it was admitted to record should form part of the record and be indorsed on the grant. A paper acquires no authenticity from the fact of its having been placed upon the

records, if it was not properly authenticated for registration
and recorded in the manner pointed out by the statute (36
Texas, 268; 26 Texas, 193). It certainly cannot be considered
a deed duly registered, as required by law, and should have
been excluded from the jury.

To avail of limitation under Article 4623, Paschal's Digest,
" Like peaceable possession " is taken to mean an actual, visi-
ble, continued, adverse, and exclusive possession. There must
be an actual occupation of the premises, cultivating and using
the same, and paying taxes under deed or deeds duly regis-
tered. Now, unless appellee has shown by evidence the con-
currence of all these requisites of this article, then the in-
structions given in sixth and eighth assignments were erroneous,
and those refused in seventh assignment were proper. In
Wofford v. McKenna, 23 Texas, 43, it is held " that the statute
" intends an instrument which is really and in fact a deed,
" possessing all the essential legal requisites to constitute it
" such in law, it must be an instrument by its own terms, or
" with such aid as the law requires, assuming and purporting
" to operate as a conveyance. Not that it shall proceed from
" a party having title, or must actually convey title to the land;
" but it must have all the constituent parts, tested by itself,
" of a good and perfect deed."

The grant in question was located within the border leagues
of the coast, so appears upon its face, and was so admitted
on the trial; it did not have the consent of the Federal Ex-
ecutive of Mexico, and the answer did not allege that consent,
and no proof was offered. And in the case of Smith v. Power,
14 Texas, 146, upon the same title, or a part thereof, the Su-
preme Court say : " The consent of the Federal Executive of
" Mexico was a condition precedent to the making of the grant
" in this case." " Wanting that consent, it was made without
" the authority of law, and was consequently void." And
again, in Smith v. Power, 23 Texas, 34, the court say : " We
" are of opinion that it cannot (this grant) constitute the basis
" or a link in a chain of transfer of title from or under the

" sovereignty of the soil ; and consequently, that it is not title,
" or color of title, within the meaning of the law."

Tested by these decisions, we feel authorized by the highest
power in the State in the position that this grant was not a
deed, tested by itself, as required in Article 4623, Paschal's Di-
gest, and should not have been admitted, as such, to sustain five
years' limitation under said article.

But again, the grant was not " duly registered," as required
by Act of 1839 (Paschal's Digest, Article 4974), or Act of 5th
February, 1840 (Paschal's Digest, 4975).

In Lambert v. Weir, 27 Texas, 363, the court say, upon
the same question and recorded title, that " We incline to the
" opinion that the testimonio was, under the former rulings of
" the court, not admissible in evidence without proof of its exe-
" cution."    The only certificate of registration that is present-
ed with this testimonio is, " Recorded February —, 1840."
Not even signed officially by the clerk.

In the case of Holliday v. Cromwell, 26 Texas, 193, the
certificate was as follows : " The foregoing deed was this day
" presented for record and thereupon admitted."    The court
say : " There not only was no such certificate, but the certificate
" made by the clerk would seem to imply that the instrument
" was recorded upon its simple presentation, without more."

And in the case in 36 Texas, 268, the same principle is
held, and even extends beyond, and doubts the admissibility of
parol evidence that the proof was made when the instrument
was presented for record, holding that a certificate of acknowl-
edgment, or proof, be made upon the instrument and become
a part of the record.

From the authorities we find that the title set up by appellee,
John Welder, was not a deed, nor was it duly registered, and
that he was not " claiming under a deed or deeds duly regis-
" tered."

It was contended in the court below, and may be contended
in this court, that the rule in relation to claims for lands, by
way of sale, when made to Mexican citizens by State author-

ities and located within the "coast leagues" without the consent of the General Government of Mexico, has been changed by this court, and former decisions upon that subject overruled, in the case of Trevinio v. Cavasos, 35 Texas, 133.

The decision in that case was made upon a grant under the colonization laws of Tamaulipas, a law differing in many respects from the law of Coahuila and Texas. The State of Tamaulipas was, as regards Texas, a foreign nation; and the only right which Texas had to any of the territory of Tamaulipas was that acquired by conquest; and this court, and all courts, have always held that the acts of former governments as regards private rights, should hold good and be respected.

*E. J. Davis, and Phillips, Lackey & Stayton,* for appellee.

In this case there are two grounds in the alternative on which the appellee relies to sustain the judgment of the court below.

*First.* Because of a grant from the sovereignty of the soil, being then the Mexican authorities, to the person from whom appellee deraigns his title.

*Second.* If this title should be found defective, then he claims under the statutes of limitation, and shows this title in connection with evidence of use and ownership to define the extent of his claim under the statutes of limitation.

In regard to the title to the five and a half leagues of Power and Hewitson between the waters of the Aransas and Chiltipin, while it is conceded that a number of decisions of this court have treated similar titles to those empressarios as void, as, for instance, in Smith v. Power, 14 Texas, 146; Id., 23 Texas, 29; Lambert v. Weir, 27 Texas, 359, yet if not inadmissible, the hope is ventured that the mistake made among the earliest decisions in our State, commencing with Edward v. Davis, 3 Texas, 321; Good v. McQueen's heirs, Id., 241, of confusing the prohibition to colonize foreigners within the border and coast leagues, contained in the Mexican national colonization

law of 18th August, 1824, as also forbidding the settlement of public land within those limits by Mexican citizens, may be corrected, and the title of Power and Hewitson was offered in the present case largely under the influence of this hope. This court in the case of Cavazos v. Trevino, 35 Texas, 133, has indicated a modification of its previous decisions in regard to this class of citizens, whose settlement of the mentioned territory was not intended to be prohibited by the said colonization law. It may be said, so to speak, to have in that case broken the ice towards doing justice to a large class of citizens who were unintentionally injured by the previous mistake of fact on part of the court. It is spoken of as a mistake of fact, because the misconception of the persons to whom the law applied seems rather a mistake of fact than of law.

At the time that construction was first given to the colonization law by this court, the means at the hands of the court for acquiring a thorough knowledge of what was the purpose of the law, were not so ample as they subsequently became, and furnish a sufficient excuse for what now seems to be so absurd an error—absurd when we reflect that there were then many thousands of Mexican citizens already living within ten miles of the coast of Mexico, and it would seem impossible that any one could suppose the Government of Mexico desirous of prohibiting the location of other Mexican citizens within those limits.

It is not too late to correct the mistake. Even if it had been a mistake purely of law, and affecting permanently the tenure of property, real or personal, it would not be improper for a court to resume the correct line of adjudication. The books are filled with overruled cases, and the doctrine of *stare decisis* should not be allowed to stand in the way of the just judge with the nerve to correct an error, even at the expense of consistency.

Judge Kent says (Comm., Vol. I., 477): " But I wish not to " be understood to press too strongly the doctrine of *stare de-* " *cisis*, when I recollect that there are more than one thousand " cases to be pointed out in the English and American books of

26

"reports which have been overruled, doubted, or limited in
"their application. It is probable that the records of many
"of the courts in this country are replete with hasty and crude
"decisions; and such cases ought to be examined without fear,
"and revised without reluctance, rather than have the character
"of our law impaired and the beauty and harmony of the sys-
"tem destroyed by the perpetuity of error."

In this case, too, no harm can be done to others by doing
justice to appellee. Other cases that have brought up this
question have been disposed of, and for the particular prop-
erty to which those cases apply, the previous rule will stand.
Appellant presents no meritorious record, and is not entitled
to the sympathy of the court. He has intruded himself into
the close of the appellee for the purpose of testing the strength
of his title, and if this can be found defective he proposes to
maintain a posesssion morally wrong, even to the ousting of
those who, under the government from which they received
it, had undoubtedly a full, complete and perfect title, and who,
from that day to this, have maintained their dangerous foot-
hold through all the vicissitudes and troubles of life on the
extreme frontier.

If the court takes this view of the matter it will also put
itself in accord with all other courts in the United States
where this question has been raised. In Arguello v. United
States, 18 How., 539, Mr. Justice Grier delivering the opinion
of the court, says: "But while a judicious policy might forbid
"the settlement of large bodies of foreigners on the boundaries
"and sea-coast, we cannot impute to them (the Mexican author-
"ities) the weakness or folly of confining their native citizens
"to the interior, and thus leaving the sea-coast a wilderness
"without population. On the contrary, the same considera-
"tions of policy which excluded foreigners would encourage
"the settlement of natives within those bounds. The statute
"books of Mexico abound in acts offering every inducement to
"Mexican families to settle on the frontier," etc., and this is
believed to be the effect of all decisions on this subject in the

courts of other States and the United States, except where the courts of the United States have followed the decisions of the Supreme Court of Texas in regard to land within our State.

Power and Hewitson were naturalized citizens of Mexico, and consequently, in relation to this purchase of land, were on the footing of native-born citizens. (See United States v. Ritchie, 17 How., 539 ; United States v. Reading, 18 How., 8.)

But if it continues to be held that the doctrine laid down in the above case of Smith v. Power, 14 Texas, is to be maintained, yet in any event appellee is entitled to an affirmance of the judgment of the court below.

The evidence establishes beyond a doubt, that appellee, without going back to the possession of those from whom he claimed, has held peaceable possession of the land under color of title duly proven and recorded in the proper county, for more than the term of five years of the time during which color of title was recorded. In Lambert v. Weir above referred to, this court seems to convey the idea that this title, which was offered in that case as now, might be accepted as the color of title called for under Section 39 of the Act of December 20th, 1836. At any rate, the opinion of the court was distinctly expressed in that case, that it, in connection with its registration, " could be legitimately used for the "purpose of showing the extent of " appellee's adverse possession. This title was recorded in the county where the land lay. It is true the court, in Lambert v. Weir, seems to be in doubt as to the question, whether the law of 20th December, 1836, was not repealed by the 16th Section of that of 1841 ; but I think, that on a re-examination, the difference in terms between the two sections will convince the court that the purposes of the two must have been different in the mind of the Legislature. In the latter, it makes the possession of five years under the circumstances therein mentioned, a " full title " precluding all claims." In other words, what was a color of title is made a perfect title by possession in conformity with

the requirements of that section. There are other differences of an essential nature in the sections, and there is nothing in their terms repugnant; and as there are no positive words of repeal, it is not to be assumed that the Legislature intended the one to replace the other, but rather that they were intended as cumulative remedies or relief to the possessor in good faith.

*Hancock, West & North,* also for appellant.

We submit, that under the facts of this case, the void title from the government of Coahuila and Texas to Powers and Hewitson could only be used in accordance with the decisions in Charle *v.* Saffold, 13 Texas, 94; Jones *v.* Menard, 1 Texas, 771, and Lambert *v.* Weir, 27 Texas, 365, for the purpose of proving the extent of possession, when an effort is made to show the right of entry barred under the 14th Section of the Act of 1848. (Paschal's Digest, Article 4621.)

In Marsh *v.* Weir, 21 Texas, 110, and in Smith *v.* Power, 23 Texas, 34, it was held, that a void title, like the one under consideration, will not support a plea of three years' limitation under the 15th Section of the Act of 1841. (Paschal's Digest, Article 4622.)

We think it is equally clear, perhaps more so, that such a void grant can be of no avail under the 16th Section of the Act of 1841, being the five years' statute. (Paschal's Digest, Article 4623.)

The 14th Section treats of the time and manner in which, under our statute, the right of entry would be tolled. The 15th Section treats of limitation under title, or color of title, under which the limitation is pleaded, shall emanate from and be traced back to the sovereignty of the soil.

Whenever a party can thus trace back to the sovereignty of the soil, either directly without any chain of transfer, or by a regular chain of transfer, or by a consecutive chain of transfer,

without its being regular, in each of these cases, and in these alone, where the title issues from the government, can he avail himself of this plea.

In the absence of the decisions in Marsh *v.* Weir and Smith *v.* Power, above cited, and as an original question, it would strike us that a party entering under a void grant, like the one under consideration, might avail himself of the 15th Section, and claim to be under title from the sovereignty of the soil.

It is true his title is bad, it is void ; but the statute itself presumed that a title invoking its aid was not good, was perhaps a nullity.    For a good title needs no assistance from prescription.

Had the decision in Marsh *v.* Weir been the other way, we believe it might have been defended, unless the conclusion can be drawn from that case, and those of Smith *v.* Power, and Lambert *v.* Weir, that the court intended to announce the broad doctrine, that a void title, such as that offered in evidence in Jones *v.* Menard, *supra ;* Trimble *v.* Smithers, 1 Texas, 790 ; Dangerfield *v.* Paschal, 11 Texas, 579 ; and Lambert *v.* Weir, *supra,* was not sufficient .to support a plea of limitation, either under the 15th (three years), or the 16th (five years) Sections of the Act of 1841, but would alone avail a party under the 14th Section (barring the right of entry).

This we believe to be the correct conclusion, though we are not sure that the court so intended to assert.    At all events, no case has yet been decided, as far as we are aware, laying down the doctrine that under a void grant, or under a junior patent, a party can avail himself of the five years' limitation.

He would never have occasion to do so under a genuine junior patent, for the three years' statute would always be sufficient.

He could not under a void or voidable grant (but more especially under a void grant, such as the one under consideration) avail himself of the five years' limitation, because when we remember that the immediately preceding section had

treated (and it must be presumed fully) of the whole subject of prescription under public grants (*i. e.*, titles emanating from the sovereignty of the soil), we must come to the conclusion that, when in the section immediately succeeding that in which the subject of prescription, by public grant from the sovereignty of the soil, is treated of, an entirely different word (and a word of more inferior legal dignity than the word " grant "), is used to describe the character of instrument under which the right of prescription is conferred : and when we remember, further, that in consideration of its inferiority to that class of titles (grants) treated of in the preceding section, a longer term of possession (five instead of three years) is required, we are brought to the conclusion that the word " *deed*," or " *deeds*," now for the first time occurring in the statute, must refer, not to " grants," and " patents," " headright certificates," " land " warrants," or " land scrip ; " but to an inferior order of tenure —that which exists by the " deed " from one private individual to another ;—and that while the word " grant " can be made frequently to include a " deed " (especially in the significant connection in which it occurs in the 16th Section of the Act of 1841), it cannot be fairly made to include " titles " or " patents " from the government.

(Davila *v.* Munford, 24 Howard, 223, where this statute is discussed.)

GOULD, J.   In December, 1862, appellant brought two suits of trespass to try title in the District Court of San Patricio county, in each of which he sought to recover six hundred and forty acres of land of appellee. Subsequently the two suits appear to have been consolidated and the venue changed to Neuces county. In April, 1869, by an amended petition, various other tracts of land were embraced in the suit, the whole forming one body of land containing six thousand seven hundred and eighty acres, described in the amended petition by giving the boundaries of the entire tract. The pleas of defendant were not guilty, and limitations of three, five and ten

years.   The plaintiff's title was satisfactorily proven by patents mostly in his own name, and dated in 1869, and as to two tract by patents to other parties with proper conveyance down · to himself ; but as to two tracts of three hundred and twenty acres each, patented to Robert Montgomery, his evidence of· title was excluded.   That evidence consisted of a certified copy . of the six hundred and forty acre land warrant or certificate granted to George C. Hatch, assignee of Robert Montgomery —a transfer of said certificate to himself, made by Samuel S. Hatch, purporting to act as the agent of George C. Hatch, dated December 30th, 1867, and a power of attorney from George C. Hatch to Lemuel S. Hatch, dated August 20th, · 1868.   The exclusion of these papers is one of the errors as- ' signed.

In support of his defense of limitation, but not as evidence of title, the defendant was allowed to show an eleven league grant from the State of Coahuila and Texas, to James Power and James Hewitson, five and a half leagues of which, lying· within the ten littoral leagues, covered the land sued for, there being no evidence of the consent of the Federal Executive to the grant.   For the same purpose he was allowed to read in evi dence a certified copy, from the records of Refugio county, of a testimonio of this grant, appearing by its indorsements to have been recorded in that county on May, 14th, 1840, but ex- hibiting no authentication for record.   There was a verdict and judgment for the defendant, from which the plaintiff Wood appeals.

Counsel for appellee seek to reopen the question of the va- lidity of the grant to Power and Hewitson, and refer to the case of Trevinio v. Cavasos, 35 Texas, 133, as authority for over- ruling numerous decisions of this court made many years since, to the effect that the consent of the Federal Executive was es- sential to the validity of grants of land of the character of the present, within the border and coast leagues, and adjudging the invalidity of the very title they would now set up. (Plum- mer v. Power, 29 Texas, 6 ; Lambert v. Wier, 27 Texas, 319 ;

Smith v. Power, 23 Texas, 30; Smith v. Power, 14 Texas, 146.)

Sixteen years have passed since this court, speaking of this grant and saying that it was void, adds: " A series of decisions, " continued almost from the organization of this court down to " the present time, thus settling the construction of the local " law, upon which the titles to real property in the oldest and " most densely peopled portions of the State so largely depend, " must be regarded as emphatically the law of the State." (Smith v. Power, 23 Texas, 32.) We remark of the case of Trevinio v. Cavasos, that the title in question emanated from the State of Tamaulipas and may possibly be distinguishable from similar titles from the State of Coahuila and Texas, so often pronounced invalid by this court. But at all events we regard the question as long since finally settled.

We do not think the testimonio was properly recorded so as to support the five years' limitation. The facts are identical with those discussed in the case of Lambert v. Wier (27 Texas), where the opinion is intimated, though no decision was made on the point, that the record was without authority. It was said in that case that since the case of Titus v. Kimbro, 18 Texas, the general rule has been acted on, that a testimonio is not admissible in evidence without proof of its execution. In the later case of Hatchett v. Conner, Justice Coke says: " It is well settled that the execution of a testimonio of title " must be proved before it is admissible in evidence." (30 Texas, 108. See also Word v. McKinney, 25 Texas, 258; Paschal v. Perez, 7 Texas, 338; DeLeon v. White, 9 Texas, 600).

We think it would be to depart from the policy that prompted these rulings, to hold, that this testimonio was properly recorded without authentication. The 2d Section of the Act of January 19th, 1869, authorizing the admission to record of " copies of all deeds where the originals remain in the public " archives, and were executed in conformity with the law exist- " ing at their dates " (Paschal's Digest, Article 4984), was to some extent discussed in the opinion in Lambert v. Wier,

where it was said that its " phraseology seemed to indicate " that it was intended thereby to provide for the record of " copies of instruments then remaining in the public archives, " and which should be authenticated by the certificate of the " officers then in charge of them." The case of Holliday v. Cromwell (26 Texas, 193) is to the same effect, and also calls attention to the first section of the same act, which requires the certificate of " the acknowledgment in proof to be made upon " such instrument and become a part of the record." In the face of this requirement, we do not see anything in the mere lapse of time since the record was made, raising a presumption that the instrument was properly proven for record.

We regard the question of the effect of Section 43, Article XII. of the Constitution of the State, declaring the suspension of statutes of limitation of civil suits from January 28th, 1861, until the acceptance of the Constitution by the Congress of the United States, as now too well settled by adjudications of this court, and as having been too long acted on, to be now disturbed. (Bender v. Crawford, 33 Texas, 745 ; Moseley v. Lee, 37 Texas, 480 ; Bentinck v. Franklin, 38 Texas 458.)

We see no such manifest error in the decisions referred to, as would justify us in reopening the question of either the construction or validity of that section of the Constitution. If there is anything in the Constitution of the United States that sustains the people of a State in their sovereign capacity from declaring the effect of a state of war, in suspending the statutes of limitation, it has not yet been so adjudicated, so far as we are advised, by the courts of the United States, nor has it yet been made to appear to our satisfaction.

The finding of the jury cannot be supported under the limitation of ten years. According to defendant's own statements on the stand, his possession began in February or June, 1852. Less than ten years had elapsed, when, on January 28, 1861, the suspension of statutes of limitation took effect.

We see no error in the exclusion of plaintiff's evidence of title to the two three hundred and twenty acres patented to

Robert Montgomery. The power of attorney was dated some seven months after the execution of the transfer which it is offered to support; in its terms it makes no reference, either to the transfer, or by specific designation, to the particular certificate or bond. In the absence of other evidence connecting the power of attorney with the transfer, we think the papers offered were correctly excluded by the court.

This failure on the part of plaintiff to make out title to part of the land claimed, that part being distinguishable, by the description given in his pleadings, from the balance of the land claimed, only by the name of the party to whom it was patented, and the number of acres, and not by field-notes given, suggests the question, whether having so failed, the jury had any data by which they could have found for him for the balance. Looking at the entire description given, we cannot say that a verdict for plaintiff for the land claimed, less the two tracts patented to Montgomery, would not have been sufficiently certain. In this connection it may be remarked, that if the case were otherwise in a condition to be affirmed on the ground that the defense of limitation was made out, yet it clearly could not be so affirmed as to two tracts of land granted to the heirs of Patrick Nevin and Thomas Amon, patented in 1868. There was no evidence of the date of the location or survey of these tracts, and in the absence of such evidence, limitation would only run from the time of patenting. (Plummer *v.* Power, 29 Texas, 6.) There was nothing in defendant's pleadings to distinguish these two tracts from the balance, and unless the plaintiff's description by reference to the patents was sufficient for that purpose, the same difficulty would present itself as to affirming the entire case on the defense of limitations.

The judgment is reversed and the cause remanded.