GOLDFRANK, FRANK & CO. v. WM. H. YOUNG.

(Case No. 5151.)

1. LIMITATIONS — STATUTES CONSTRUED — TRUST SALE — INJUNCTION.— More than four years after the maturity of a promissory note, an injunction was obtained to restrain a trustee from selling land conveyed to him by trust and to secure its payment. It was not pretended that the note had been paid, but it was claimed that the right to enforce collection was barred in limitation. Within less than three years before the injunction was applied for, a portion of the principal had been paid, and the maker obtained a written release of a portion of the land, which in terms retained and continued the express lien on the remainder of the land. The debt was for money loaned, and the maker of the note asked for and obtained, verbally, indulgence in extension of time for payment, only a short time before seeking in this suit to enjoin its collection. *Held:*

(1) It is well settled that there is no essential difference between a mortgage with power of sale in default of payment of a debt which it is given to secure, and an ordinary mortgage, in reference to the right to foreclose, either through a judgment or decree of court, after the period of limitation has elapsed, if that be pleaded as a defense. The lien given by either cannot be enforced through a judgment or decree, after the debt it is given to secure, is barred.

(2) The statutes of limitation, in actions for debt, affect the remedy only. Citing Wood v. Welder, 42 Tex., 409; Grigsby v. Peak, 57 Tex., 147.

(3) It is but reasonable to infer, since the legislature has declared what shall be the effect of the statutory bar in "actions or suits" relating to the title to real property, and has made no provision declaratory of a similar effect in other causes of "actions or suits" mentioned in the statute, that it was not the legislative purpose to give the same effect to the bar in the latter classes of cases.

(4) Under the statutes of limitation now in force, the same rule which applies in cases where the failure to bring suit within the prescribed time is the sole defense, will not apply in cases in which that, coupled with adverse possession of the thing in controversy, whether realty or personalty, is made the ground on which the defense is based. In the one case, the statute denies to the holder of the claim the aid of the courts for its enforcement, but does not declare the claim satisfied; in the other, the facts which create the statutory bar destroy the right of the former owner, and vest title in the possessor.

(5) The statute of limitations which applies to a money demand operates upon the remedy when its enforcement is sought by "suits or actions in courts." It does not deprive the creditor of a remedy when he had provided by contract to enforce, through a trust deed, the payment of his claim without the assistance of the courts. Citing Jordan v. Peak, 38 Tex., 429; Stewart v. Mackey, 16 Tex., 57, and Chipman v. McKinney, 41 Tex., 78, cited with approval.

(6) On the right of a creditor who, by contract, has stipulated for the sale of property conveyed in trust to secure his debt without the intervention of the courts, the rules of equity regarding laches and stale demands apply, and not the present statutes of limitation.

(7) The plaintiff, while admitting the justness of an unpaid debt secured

by his trust deed, could not have relief by injunction to restrain the sale of the trust property for its payment, without violence to the rule that he who seeks equity must do equity.

(8) The judgment of the lower court perpetuating the injunction, which restrained the sale by the trustee of the trust property to satisfy the debt, was error requiring a reversal of the case.

2. CASES REVIEWED.— Sprague v. Ireland, 36 Tex., 655; Blackwell v. Barnett, 52 Tex., 331; Lord v. Morris, 18 Cal., 482; Low v. Allen, 26 Cal., 143; Grant v. Burr, 54 Cal., 298, reviewed.

3. CASES APPROVED.— Stringham v. Brown, 7 Iowa, 33; Walter v. McCockey, 38 Md., 75; Tooke v. Newman, 75 Ill., 215; Hemphill v. Watson, 60 Tex., 682, and Elder v. Bank, 12 Kansas, 238, cited and approved.

4. CASE OVERRULED.— Blackwell v. · Barnett, 52 Tex., 331, on the question of limitation here involved, overruled.

APPEAL from Bexar. Tried below before the Hon. Geo. H. Noonan.

*Waelder & Upson*, for appellants, cited: 2 Jones on Mortgages, §§ 1170, 1198, 1723, 1728, 1742, 1743, 1751, 1763; Taylor v. Sonora Mining Co., 17 Cal., 594; Wofford v. Unger, 53 Tex., 641; Calkins v. Calkins, 3 Barb. S. C. Rep., 305; Grayson v. Taylor, 14 Tex., 674; 3 Wait's Act. & Def., 213; 7 Wait's Act. & Def., 301 *et seq.;* 4 Kent (7th ed.), marginal page, 189; Van Keuren v. Parmelee, 2 N. Y., 527; Harper v. Fairley, 23 N. Y., 444.

*Shook & Ditmar*, for appellee, cited: Smith v. Fly, 24 Tex., 353; Biddell v. Brizzolara, 56 Cal., 374–383; Wood on Limitations, secs. 79–85; De Cordova v. Galveston, 4 Tex., 482; Blackwell v. Barnett, 52 Tex., 326; Duty v. Graham, 12 Tex., 437; Locke v. Wilson, 9 Heisk. (Tenn.), 784.

STAYTON, ASSOCIATE JUSTICE.— The appellee, on the 27th day of February, 1882, sued out a writ of injunction to restrain the sale of certain real estate described in his petition, under a deed of trust with power of sale, which he had executed to A. M. Cohen, as trustee, to secure a note given by the appellee to Goldfrank, Frank & Co., of date February 12, 1877, payable twelve months after its date, for $6,000, and bearing interest from date, payable semi-annually, at the rate of twelve cent. per annum.

There was no pretense in the petition that the note had been paid, and the sole ground on which the injunction was sought and granted was, that the note was barred by the statute of limitation, and that therefore the power given by the trust deed had ceased to be operative.

The deed of trust gave power to the parties for whose benefit it was executed to substitute another trustee should it become necessary; and the trustee named in the deed having declined to execute the trust, the beneficiaries, in the proper manner, named M. Krakauer such substitute, and he at once advertised the property for sale; same to be made on February 28, 1882.

The semi-annual interest was paid until August 12, 1880.

On 26th July, 1879, $1,000 was paid on the principal of the note, and the same indorsed thereon in the presence of the maker, who on that day obtained by writing a release of a part of the property from the operation of the lien given by the trust deed, and in the instrument by which this was done a lien was expressly retained on the residue of the property. That instrument was accepted by the appellee and he claimed the benefits which it gave him.

The appellee testified as follows: "The debt mentioned in the note and secured by the deed of trust was contracted for money loaned to me by Goldfrank, Frank & Co. I have asked and received indulgence (and time) at various times after the maturity of the debt, and up to a very short time before the filing of the petition in this case. There is no claim of payment or complaint of unfair dealing on the part of Goldfrank, Frank & Co."

The court below perpetuated the injunction on the sole ground that the debt was barred by the statute of limitations.

That there is no essential difference between a mortgage with power of sale, or a deed of trust made to a third person with power to sell in default of payment of a debt which either is given to secure, and an ordinary mortgage, in reference to the right to foreclose either through a judgment or decree of a court, after the period of limitation has elapsed, if that be pleaded as a defense, is well settled. Duty v. Graham, 12 Tex., 427; Perkins v. Sterne, 23 Tex., 561; Ross v. Mitchell, 28 Tex., 151; Jones on Mortgages, 1769; McLane v. Paschal, 47 Tex., 366; Angell on Limitations, 7.

That the lien given by either, in such cases, cannot be enforced through the judgment or decree of a court, after the debt secured by the lien is barred, is well settled.

It may be considered as the settled law of this state, that in actions for the recovery of debt, and like actions, the statutes of limitation affect the remedy solely. Gautier v. Franklin, 1 Tex., 732; Hays v. Cage, 2 Tex., 506; De Cordova v. City of Galveston, 4 Tex., 480; Jones on Mortgages, 1203.

No court in the Union has gone further to sustain this rule than the supreme court of this state. Bender v. Crawford, 33 Tex., 745;

Wood v. Welder, 42 Tex., 409; Grigsby v. Peak, 57 Tex., 147. Whether the rules laid down in the cases last cited, in their full scope, can be maintained on principle or authority need not be examined in this case.

Before the adoption of the Revised Statutes it was held that an adverse possession of property, real or personal, for the period and under the circumstances prescribed by the statute, would give title to the thing possessed and destroy the title of the former owner. Cochrane v. Winburn, 13 Tex., 144; Claiborne v. Tanner, 18 Tex., 78; Thurmond v. Trammell, 28 Tex., 380; Smith v. Montes, 11 Tex., 24; Moody v. Holcomb, 26 Tex., 719; Winburn v. Cochran, 9 Tex., 125; Scott v. Rhea, 5 Tex., 260; Cunningham v. Frandtzen, 26 Tex., 41.

In reference to realty the statute now declares that: " Whenever in any case the action of a person for the recovery of real estate is barred by any of the provisions of this chapter, the person having such peaceable and adverse possession shall be held to have full title, precluding all claims" (R. S., 3196); thus, as to realty, putting the question as to the effect of the statutory bar beyond controversy; and as the same language is used in the statutes now in force, in reference to actions for personal property, as was used in the statutes in force prior to the adoption of the Revised Statutes, we must presume that it was intended they should receive the same construction as to the effect of the statutory bar upon the title of the former owner.

The legislature having declared what shall be the effect of the statutory bar in " actions or suits " relating to the title to real property, in the absence of such declaration, or of a settled construction giving to the bar of the statute a similar effect in other classes of " actions or suits " mentioned in the statute, it is but reasonable to infer that it was not the intention of the legislature to give the same effect to the bar in the other classes of cases.

The statute now in force, in reference to the bar of limitation, evidences clearly the intention of the legislature that the same rule was not intended to apply in cases in which the failure to bring suit or action within the prescribed time is the sole ground on which the defense arises, as will apply in cases in which this, coupled with adverse possession of the thing in controversy, whether realty or personalty, is made the ground on which the defense is based.

In the one case, the facts which create the statutory bar destroy the right of the former owner and vest title in the possessor; in the other, the law denies to the holder of the claim any remedy through

the courts for its assertion or enforcement, but does not declare the debt satisfied as by payment, or otherwise so totally annulled as to be deemed to have no existence on which any right may be based.

If it had been the intention of the legislature utterly to annul a cause of action given by contract, such as is evidenced by the note given by the appellee to Goldfrank, Frank & Co., so that it could not, under any circumstances, constitute the basis of a right, it would have been so declared, as is it, in terms and in effect, in cases in which the recovery of specific things is sought after the statutory bar has been completed under an adverse possession.

In the one case, the expiration of the time prescribed, attended with the requisite adverse possession, destroys the right of the former owner and vests title to the thing in the adverse possessor, while in the other, the creditor is simply denied a remedy through the courts, if his adversary asserts the statutory bar as a defense.

A barred debt has constantly been held a sufficient consideration for a new promise.

In reference to the operation of the statutes of limitation in any matter in which the recovery of money is sought, the statute itself limits it to " actions or suits in courts" (R. S., 3202, 3203, 3205), and it provides within what time "actions or suits" in the different classes of cases may be brought, but it does not attempt to determine within what period any one must enforce a right which the debtor has placed it in the power of the creditor to enforce otherwise than by an " action or suit in court."

That the legislature might fix a period within which steps must be taken to enforce rights otherwise than through the courts, when such right and power have been given, by contract, by one person to another, as may it prescribe a period within which actions or suits must be brought in courts, there is no doubt; but the declaration that persons must institute "suits or actions in courts" within a fixed period to enforce their claims, which can be enforced only in that manner, is not equivalent to declaring that a creditor who has been given, by contract, a right and means by which he may enforce his claim otherwise than through the courts, shall not enforce it after the time at which he might institute an action or suit, without subjecting himself to the bar which could be urged by a plea of limitation.

It is not always true that rights which cannot be enforced through the courts are valueless, nor that contracts which the courts cannot enforce are invalid.

This is well illustrated by the decisions in this state in reference

to the right of a creditor who, prior to the adoption of the present constitution, had acquired a deed of trust or mortgage with power of sale, on a homestead properly executed by a husband and wife, to secure a debt.

The constitution forbade the forced sale of the homestead, which was the only way in which a court could have subjected such property to the payment of the debt; hence they had no power in this manner to enforce a contract by which the debtor had agreed, if necessary, that the homestead should be sold and the proceeds applied to the payment of the debt thus secured; yet a contract of that character was held valid, and the power of the trustee to make the sale was recognized; and, in two cases at least, injunctions which sought to restrain such a sale were dissolved.   Sampson v. Williamson, 6 Tex., 102; Bomback v. Sykes, 24 Tex., 217; Chipman v. McKinney, 41 Tex., 78; Jordan v. Peak, 38 Tex., 429; Stewart v. Mackey, 16 Tex., 57.

It seems to be generally held that a pledgee, notwithstanding the debt which the pledge is given to secure may be barred by limitation, may enforce the payment of his debts through the sale of the property, if such right be originally given by the contract of the parties.   Hudson v. Wilkinson, 61 Tex., 609; Shears v. Hartly, 3 Esp., 80; Morse v. Williams, 3 Campbell, 418; Higgins v. Scott, 2 Barn. & Ad., 413.

The question whether the legislature can, under constitutional provisions which prohibit the passage of retroactive laws, revive a debt against which the statute has fully run, does not arise in this case; and, however that may be, cannot affect the question before us; for here the right of the appellants to have the sale of the property made to pay their debt, and the power of the trustee to sell, rest upon a contract freely executed by the appellee, in which he did not see proper to fix a period after which the power which he has expressly given shall not be exercised.

In cases of this character the rules in equity applicable to laches and stale claim would doubtless have their proper effect.

On the immediate question now before us there are decisions apparently conflicting.   In the case of Sprague v. Ireland, 36 Tex., 655, it was, in effect, held that a sale made by the trustee named in a trust deed passed the title to the property, notwithstanding the debt which it was given to secure was barred by limitation at the time the sale was made.

In Blackwell v. Barnett, 52 Tex., 331, it was held that a deed of trust, similar to that in controversy, could not be executed by the

trustee after the debt which it was given to secure was barred by limitation; and that such a sale would be restrained by an injunction, even though the trustee had advertised the land for sale prior to the time at which the debt became barred, the date of contemplated sale being after that period.

In California mortgages and deeds of trust are held to be the same in legal effect, and no action on either can be maintained after the debt which they are given to secure is barred by limitation. Lord v. Morris, 18 Cal., 482; Low v. Allen, 26 Cal., 143.

The case of Grant v. Burr, 54 Cal., 301, presented the same question involved in this case, and in disposing of the case on this point it was said: "It has never been held that the expiration of the statute time for bringing an action to recover a debt, or to enforce any personal obligation, operated either an *extinguishment or payment*. Such a result cannot be derived from the language of our statute, the reason or policy of the law, or the decisions of courts in this state or elsewhere. The contrary has been often held; and, by our established rules of pleading, the limitation must be specially pleaded or it is waived.

"No action has been commenced upon the promissory note. The present plaintiff, however, who has transferred the legal title to the lands conveyed as security for the payment of an indebtedness, which has never been satisfied in whole or part, comes into equity to ask that the sale by the trustee under the power conferred by his deed be enjoined without tendering payment; but, on the contrary (since he asks that the debt be extinguished), boldly avowing his intention never to pay." The injunction was dissolved, and it seems to us that no other result could have ensued without a disregard of the principles to which we have already referred.

If the appellants had brought an action at law upon their note, or had sought a foreclosure of the trust deed in an equity proceeding, no court in this state would have given them any relief, if the appellee relied upon the bar of the statute.

In this case, however, the appellee comes into a court of equity and makes known that he borrowed $6,000 from the appellants, for which he executed to them his promissory note which has never been paid, and that to secure them he executed to a trustee a deed of trust through which he empowered the trustee, without limitation as to time, to sell the property therein named, and to appropriate the proceeds to the payment of the debt. He further makes known to the court that the utmost fairness has been manifested towards him by the appellants, and that from time to time up almost to the

date at which he filed the petition in this case, upon his application and for his accommodation the appellants had extended the time within which the sum so long due should be paid.

His prayer is, that the appellants be forever restrained from enforcing the payment of the debt admitted to be justly due to them, in the manner in which he has expressly contracted they might enforce it; and upon what ground does he ask such relief from a court of equity?

Upon none other than that he has a legal defense which he might insist upon were suit brought against him. Upon the ground that one or even two remedies are cut off by the bar of the statute of limitations.

He tenders not that which he admits to be due, and yet asks relief from a court of equity.

Under such a state of facts as is presented in this case, if the effect of the statutory bar were different to that which we suppose to be the real effect, even then the appellee has no standing in a court of equity.

The district courts of this state have equity jurisdiction, and "the principles, practice and procedure governing courts of equity shall govern proceedings in injunctions when the same are not in conflict with the provisions of this title or other law," is the declaration of the statute. R. S., 2898.

The maxim that "he who seeks equity must do equity," while not enforced in the entirety of its broad general sense, yet is enforced in courts of equity in a sense broad enough to deny to the appellee any relief under the averments of his petition. A distinguished elementary writer thus explains the meaning of the maxim: "The meaning is, that whatever be the nature of the controversy between two definite parties, and whatever be the nature of the remedy demanded, the court will not confer its equitable relief upon the party seeking its interposition and aid unless he has acknowledged and conceded, or will admit and provide for, all the equitable rights, claims and demands justly belonging to the adversary party and growing out of or necessarily involved in the subject-matter of the controversy. It says, in effect, that the court will give the plaintiff the relief to which he is entitled, only upon condition that he has given or consents to give the defendant such corresponding rights as *he* also may be entitled to in respect to the subject-matter of the suit. This meaning of the principle was more definitely expressed by an eminent judge in the following terms:  'The court of equity refuses its aid, to give to the plaintiff

what the law would give him if the courts of common law had jurisdiction to enforce it, without imposing upon him conditions which the court considers he ought to comply with, although the subject of the condition should be one which the court would not otherwise enforce.'" Pomeroy's Equity Jurisprudence, vol. 1, 385.

The maxim and its application is very well illustrated by the case of Fanning *v.* Dunham, 5 Johns. Ch., 137. In that case a plaintiff had entered into a usurious contract which was void under the statute, to secure which he had given a bond with warrant of attorney under which a judgment had been obtained in a court of law, which, however, might be set aside in a court of equity. He had also given a mortgage with power of sale, which the creditor was seeking to enforce, as in this case, without application to the courts. Under this state of facts the plaintiff sought to restrain the defendant from using the securities thus held by him for the enforcement of the usurious debt.

It was held that, were the lender the plaintiff, the court would not enforce the usurious contract, but would declare the securities void and cancel them; but that as the lender was not seeking aid from the court, no relief would be given against him in an action by the debtor, unless *he* would pay or offer to pay the principal and interest.

In disposing of the case, in reference to the securities and the relief sought, in other parts of the opinion at large, discussing the questions involved, the chancellor said: "In Scott *v.* Nesbit, 2 Brown, Ch., 641 (2 Cox, 183), we have this strong observation of Lord Thurlow: 'I take it to be an universal rule, that if it be necessary for you to come into this court to displace a judgment at law, you must do it upon the equitable terms of paying the principal money really due, with lawful interest. I have no idea of displacing the judgment on any other terms.' . . . The equity cases speak one uniform language; and I do not know of a case in which relief has ever been afforded to a plaintiff seeking relief against usury, by bill, upon any other terms. It is the fundamental doctrine of the court. Lord Hardwicke (1 Vesey, 320) said that, in case of usury, equity suffers the party to the illicit contract to have relief, but whoever brings a bill in case of usury must submit to pay principal and interest due. Lord Eldon (3 Ves. & Bea., 14), after an interval of more than sixty years, declared precisely the same rule. . . . The same objection and difficulty occur in the case of a mortgage taken to secure an usurious loan, with a power to sell annexed to it, by means of which the creditor forecloses his mortgage by an act

*in pais*, without calling upon any court to assist him. The debtor has no relief in that case but by applying to this court, and then he must comply with the terms of paying what was actually advanced. He deprives himself in that case by the power to sell, as he does in the other by his warrant of attorney to confess judgment, of an opportunity to appear in the character of defendant and plead the usury. These are cases in which the party, by his own voluntary act, deprives himself of his ability to inflict upon the creditor the loss of his entire debt."

The principles announced in this case may be recognized as those applicable to all such cases as the present. Stringham *v.* Brown, 7 Iowa, 33; Sloan *v.* Coolbaugh, 10 Iowa, 34; Walker *v.* Cockey, 38 Md., 75; Casady *v.* Bosler, 11 Iowa, 242; Pomeroy's Equity, 385–396; High on Injunctions, 443, 1116–1122, 1130; Story's Equity, 64e, 301; Bispham's Principles of Equity, 43; Tooke *v.* Newman, 75 Ill., 215; Elder *v.* Bank, 12 Kans., 238; Spann *v.* Sterns, 18 Tex., 563; Hemphill *v.* Watson, 60 Tex., 682.

Elmyra Gillis and Malcolm Gillis are not before this court, and it is therefore unnecessary to consider their rights with reference to the claim asserted by appellants.

The judgment of the court below will be reversed as to the appellee, and judgment will be here rendered dissolving the injunction.

It is accordingly so ordered.

REVERSED AND RENDERED.

[Opinion delivered June 23, 1885.]