## McNEESE v. PAGE.
### No. 10603.

Court of Civil Appeals of Texas. Dallas.
May 10, 1930.

Rehearing Denied June 21, 1930.

490

J. H. Synnott and John Davis, both of Dallas, for appellant.

W. H. Flippen and John T. Gano, both of Dallas, for appellee.

LOONEY, J.

Heber Page, trustee in bankruptcy of the estate of Marsalis Lumber Company, a corporation, sought to recover from J. L. McNeese the sum of $2,250 and interest, alleging that the bankrupt owned and had on deposit in the Mercantile National Bank of Dallas, Tex., the sum of $2,250, which, on September 28, 1927, was unlawfully taken possession of by defendant and converted to his own use and benefit. The court rendered judgment against defendant, from which this appeal is prosecuted.

The material facts are these: The Marsalis Lumber Company was organized by defendant in the year 1923, with an authorized capital stock of $20,000, owned practically by defendant and his wife; in 1924 its capital stock was increased to $50,000 subscribed by stockholders in proportion to their holdings, and again on April 30, 1925, its capital was increased to $75,000, of which $12,500 was purchased by W. C. Gorman, leaving defendant and wife owners of from $57,000 to $60,000 of the capital stock of the corporation. In September, 1926, the company was in financial difficulties and, after a conference with representatives of the principal creditors, the parties agreed that a creditors' committee should be formed with authority to dictate the policies of the company, work with its officers in the management of the business, and keep it a going concern, and to these ends, three representatives of the creditors were elected to membership on the board of directors to fill vacancies occasioned for that purpose; thus the board of five members was composed of three creditors, defendant McNeese, vice president, and Mr. Gorman, president and manager of the company. At the time of this arrangement, McNeese held an indebtedness against the company in excess of $6,000. For several years he had an account on the books of the company, where he was credited with various items of money deposited, and was debited with the amounts of such checks as were drawn in his favor against the account. Among other items to his credit were two in the sum of $1,000 each, made in the spring of 1925, and one for $4,500 made June 19, 1925, for cash deposited with the company. At the conference mentioned above, defendant insisted that, as a creditor of the company, he should share proportionately with other creditors in payments made from the operation of the business; but in order to make a good showing under the operation of the business by the creditors committee, he agreed to postpone payment of his claim until after other creditors were paid, conditioned that the company would be kept a going concern. All creditors of the company were notified and assented to this arrangement. The business of the company was conducted about one year under the arrangement, and payments aggregating 30 per cent. of claims were paid all creditors, except McNeese. On September 27, 1927, the board of directors, a majority of whom, as before stated, were representatives of creditors of the company, decided, over the protest of defendant, to cease operations, sell out and distribute all its assets among the creditors. At this time, the company had to its credit in the Mercantile National Bank of Dallas between $2,600 and $2,700, and McNeese insisted that he be paid on his claim the same percentage theretofore paid other creditors, but this was denied him by the other directors, who then adopted a resolution directing that all creditors, other than McNeese, be paid an additional dividend of 5 per cent. from the fund on deposit in the bank. McNeese was, as before stated, director and vice president of the company, and was at all times

authorized to draw checks on behalf of the company, so on the following morning, to wit, September 28, 1927, he drew the company's check payable to. himself (also signed by Mr. Carmichael, secretary) for the sum of $2,250, which amount he collected from the bank.

The Marsalis Lumber Company was thereafter, on October 7, 1927, adjudged a voluntary bankrupt by the United States District Court for the Northern district at Dallas, and plaintiff, Heber Page, was appointed trustee of the estate.

At the conclusion of the evidence, defendant requested the court to direct a verdict in his favor. This was refused and the case was submitted on three special issues, in answer to which the jury found that, at the time (September 28, 1927) defendant withdrew the $2,250 from the bank, Marsalis Lumber Company was indebted to him in the sum of $6,168.65, or more; that defendant agreed to postpone payment of his claim against the company until after other creditors were paid (under the arrangement with the creditors committee), and that the note for $6,500 (hereafter mentioned) was executed April 5, 1928, whereupon defendant moved for judgment non obstante veredicto, which was also refused, as well as his motion for a new trial.

The questions discussed below have been properly presented. As stated, the jury found that defendant agreed to postpone payment of his claim against the Marsalis Lumber Company until after the other creditors were paid. In this connection defendant requested, and the court refused to submit, the following: "Did J. L. McNeese agree to postpone receiving any payment on his claim against the Marsalis Lumber Company until all other creditors were paid in full, in case of the Marsalis Lumber Company ceasing to be a going concern and the assets sold for the purpose of distributing among the creditors"? Also "Was the creditor-directors of the Marsalis Lumber Company going to cease operations of the business as a going concern and sell the assets and distribute the proceeds among the creditors"?

It is obvious that the facts sought to be elicited by these questions constitute part of the issue submitted only in part by the court, but the submission of the requested issues was unnecessary because the evidence is uncontradicted that plaintiff's agreement, to postpone payment of his claim until other creditors of the company were paid, was conditioned on the maintenance of the company as a going concern, and further that, on September 27, 1927, the directors decided to cease operations, sell out, and distribute its assets among the creditors.

Defendant assigned error on the refusal of the court to instruct a verdict in his favor, also on its refusal to enter judgment in his favor non obstante veredicto. These assignments may be treated as presenting, in effect, but one question; that is, whether under the facts defendant McNeese was entitled, under the provision of section 108, title 11 USCA, to exercise the right of set-off. The set-off provision of the Bankruptcy Act reads in part as follows: "(a) In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid. * * *"

■ In response to one of the issues submitted, the jury found (with abundant evidence to sustain the finding) that, at the time defendant drew the check payable to himself for $2,250, the company was indebted to him in the sum of $6,168.65, or more. In addition to this finding, the evidence is undisputed that the agreement between the creditor-directors of the company and defendant was, as found by the jury, to the effect that he would postpone collection of his claim until other creditors were paid, conditioned, however, on the company being kept a going concern. Defendant lived up to his part of the agreement, but the creditor-directors, on September 27, 1927, adopted a resolution, over defendant's protest, ordering the sale of all assets of the company for distribution and rejecting defendant's claim, thus denying him the right to participate with other creditors in payments to be made from the assets of the company. Prior to the arrangement with creditors, defendant had been authorized to draw checks, secure loans, and execute notes, etc., on behalf of the company, and this authority was not revoked by the arrangement made with creditors. We are of opinion, therefore, that defendant was within his authority in drawing the check payable to himself, and in applying the money collected as a credit on the debt the company owed him. Of the $2,250 drawn from the bank, defendant applied $1,900 as a credit on his claim against the company, and $350 was applied on a claim for plumbing that a Mr. Pritchard owned in a mechanic's lien note collected by the company, transferred by Pritchard to the Standard Sanitary Manufacturing Company, and held for collection by defendant's law firm, McNeese & Roberts.

■ This suit is not to avoid the payment as a preference, but is for conversion; hence the material question presented is, Was defendant privileged, under the circumstances, to exercise the right of set-off? The form or manner in which an offset is accomplished is immaterial. In Collier on Bankruptcy (12th Ed.) vol. 2 p. 1093, the following doctrine applicable here is announced: "The time when the right of set off may be exercised is not restricted to the adjudication, but may be valid, if otherwise unassailable, at any time within four months prior to bankruptcy. The set off may be made by a bank at any time be-

fore a petition is filed, and even with full knowledge that the depositor was insolvent. * * * There is nothing in this § (108) which prevents the parties from voluntarily doing before the petition is filed, what the law itself requires to be done after proceedings in bankruptcy are instituted."

■ This provision of the statute is liberally construed by the courts in favor of the right of set-off, as manifested by language such as was employed by the court In re W. & A. Bacon Co. (D. C.) 261 F. 109, 111, as follows: "The doctrine of set-off is in itself eminently just, and is increasingly favored in courts of bankruptcy, because of its essential fairness. See Clifford, Trustee v. Oak Valley Mills Co. (D. C.) 229 F. 851, 853, and cases cited."

In the following cases the right of set-off was affirmed on facts that bear close resemblance to the case at bar, to wit, Meighan v. Cohen, 161 Minn. 302, 201 N. W. 431; In re Philip Semmer Glass Co. (C. C. A.) 135 F. 77; Norfolk & W. Ry. Co. v. Graham (C. C. A.) 145 F. 809; In re Harper (D. C.) 175 F. 412; Germania, etc., Bank v. Loeb (C. C. A. Sixth Circuit) 188 F. 285; In re W. & A. Bacon Co. (D. C.) 261 F. 109.

We are of opinion, therefore, that defendant was entitled to exercise the right of set-off at the time he collected the money from the bank and applied same as a credit on the claims he held against the company.

■ Plaintiff insists, however, that defendant's claim was barred by limitation at the time he attempted to exercise the right of set-off. This subject will be controlled by the limitation laws of this state (see Collier on Bankruptcy vol. 2 (12th Ed.) p. 983). Defendant's claim against the company was evidenced either by a promissory note or by an account. If evidenced by note, the claim was not barred, but if evidenced by an account, the applicable state law is article 5526, R. S. 1925, as follows: "There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description: * * * 4. Actions for debt where the indebtedness is not evidenced by a contract in writing. 5. Actions upon stated or open accounts, other than such mutual and current accounts as concern the trade of merchandise between merchant and merchant, their factors or agents. In all accounts, except those between merchant and merchant, as aforesaid, their factors and agents, the respective times or dates of the delivery of the several articles charged shall be particularly specified, and limitation shall run against each item from the date of such delivery, unless otherwise specially contracted." Construing this statute, our Supreme Court, in Goldfrank v. Young, 64 Tex. 432, 434, announced the following doctrine: "It may be considered as the settled law of this state, that in actions for the recovery of debt, and like actions, the statutes of limitation affect the remedy solely. * * * In reference to the operation of the statutes of limitation in any matter in which the recovery of money is sought, the statute itself limits it to 'actions or suits in courts' * * * and it provides within what time 'actions or suits' in the different classes of cases may be brought, but it does not attempt to determine within what period any one must enforce a right which the debtor has placed it in the power of the creditor to enforce otherwise than by an 'action or suit in court.'"

To the same effect is the language of Judge Gaines in Fievel v. Zuber, 67 Tex. 279, 3 S. W. 273, 274, as follows: "The statute does not say that no debt shall be collected, but that no action shall be brought; nor does it provide that the debt shall be considered extinguished. And statutes of limitations worded likewise are generally held to operate solely upon the remedy in the courts, and not to destroy the debt." McNeese was authorized generally to draw checks in payment of the company's indebtedness, and in the instant case used authorized means. The facts do not, in our opinion, bring the case within the purview of the statute of limitation, in that, the exercise of the right of set-off is not tantamount to the prosecution of an "action or suit in court."

■ But even if it can be said that the statute is applicable to the facts of the case, still we are of opinion that limitation had not run against defendant's claim at the time he exercised the right of set-off. As before stated, his claim against the company was evidenced either by note or account. His allegation (sustained by his undisputed testimony) is that he drew the company's note payable to himself for $6,500, which included three cash items deposited with the company, two for $1,000 each, and one for $4,500, and that the status of the account, at a particular time, reflected the amount due upon the note. Appellee contends, however, that the note had no existence until after the adjudication in bankruptcy. The jury found in response to an issue submitted that the note for $6,500.00 was actually executed April 5, 1928, several months after the adjudication. The correctness of this finding is challenged by appellant as wholly unsupported by evidence. This criticism, in our opinion, is well taken. The record is bare of any evidence adduced justifying a finding of any date for the note other than that fixed by the undisputed testimony of defendant; that is, June 19, 1925. The only circumstance that can be considered a reflection on the correctness of defendant's testimony is the fact that at first (October 26, 1927) he filed claim against the bankrupt estate as an open account, but

later, on April 5, 1928, in an amended pleading he set up the existence of the note. His explanation is that the amended claim was filed to meet a suggestion that his account was barred by limitation. We think the undisputed evidence forbade the finding made by the jury.

■■ However, for sake of the argument, the theory of appellee may be accepted; that is, ·that the note was brought into existence after the company was adjudged a bankrupt, and that defendant's claim, at the time of the adjudication, existed as an open account, still we are of opinion that the claim as thus evidenced was not barred at the time (September 28, 1927) defendant exercised the right of set-off.

At the creditors' conference in September, 1926, defendant was recognized and treated with as a creditor of the company, the understanding was reached that he would postpone payment of his claim until after other creditors were paid, conditioned however, on the company being kept a going concern by the creditor-directors. Defendant complied with his obligation in this respect, and made no effort to collect his claim until after the directors, by resolution, decided to cease operations, close out the business, distribute the assets of the company, and refused to recognize him as a creditor. Under these circumstances, we hold plaintiff, as trustee of the estate, estopped to urge the statute of limitation against defendant's claim. See Kraus v. A. H. & D. H. Morris (Tex. Civ. App.) 245 S. W. 450; Holman v. Omaha, etc., Co. 117 Iowa, 268, 90 N. W. 833, 62 L. R. A. 395, 94 Am. St. Rep. 293; Chesapeake, etc., Co. v. Speakman, 114 Ky. 628, 71 S. W. 633, 63 L. R. A. 193; 10 R. C. L. 835.

In 10 R. C. L. 835, mention is made of situations where estoppel may be urged against the plea of limitation, as follows: Where an agreement is made "that a claim is to abide the issue of a suit on another claim, or any agreement whereby the creditor is lulled into security and thereby delays action, is held to create an estoppel barring the debtor from relying on the statute."

■ The account between Marsalis Lumber Company and defendant containing various debits and credits, evidenced according to the findings of the jury that, at the time defendant checked out the $2,250 from the bank, the company owed him $6,168.65. Appellant's brief contains an unchallenged statement to the effect that, within two years prior to the exercise by him of the right of set-off, credits were entered on the account in excess of the sum withdrawn from the bank; this being true, another conclusive answer is furnished to the plea of limitation.

To summarize, we hold that, as the bankrupt was indebted to defendant in excess of the amount sued for, defendant was entitled to exercise the right of set-off; on the question of limitation, for reasons stated, we hold that the statute of limitation is not applicable to the facts of the case, but even if so, still we are of opinion that defendant's claim was not barred at the time he exercised the right of set-off, and this without regard to whether it was evidenced by note or open account.

The judgment of the lower court is reversed, and judgment is here ·rendered for appellant.

Reversed and rendered.