Reversed and Remanded and Opinion filed July 22, 2010.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00214-CV

___________________

 

Holman Street Baptist Church, Appellant

 

V.

 

Limas Jefferson, Appellee



 



 

On
Appeal from the 113th District Court

Harris County,
Texas



Trial Court Cause No. 2006-75328

 



 

 

OPINION

Holman Street Baptist Church appeals
from a judgment notwithstanding the verdict (JNOV) favoring Limas Jefferson. 
Jefferson initially sued Holman Street seeking a declaratory judgment that because
the statute of limitations had run on a promissory note signed by Jefferson,
Jefferson was entitled to the return of stock given to Holman Street as
collateral.  Holman Street then filed a counterclaim seeking to collect on the
note.  At the conclusion of trial, the jury returned findings favorable to
Holman Street.

In his motion for JNOV, Jefferson alleged that there
was no evidence of his having received consideration in exchange for signing
the promissory note.  He also argued that as a matter of law, the statute of
limitations barred Holman Street’s attempt to collect on the note.  The trial
court granted the motion and ordered the collateral returned to Jefferson.  On
appeal, Holman Street contends that (1) the evidence was legally sufficient to
establish that Jefferson received consideration for signing the promissory
note; (2) because Jefferson had sought affirmative relief in his lawsuit, Holman
Street could raise its claims despite the running of the statute of
limitations; (3) the statute of limitations was extended by Jefferson’s
promises to repay the loan; and (4) Jefferson was not entitled to return of the
collateral.  We reverse and remand for further proceedings in accordance with
this opinion.

I.  Background

Certain key facts in this case are undisputed,
including that (1) in 1992, Jefferson signed a promissory note agreeing to pay
Holman Street $93,674.72 plus interest; (2) also in 1992, Jefferson signed a
security agreement granting Holman Street a security interest in 142,906 shares
of stock in Unity National Bank; (3) Holman Street took possession of the stock
on the day the security agreement was signed; (4) Jefferson has made no payments
of principal or interest; and (5) the accrued principal and interest was
$1,252,837.37 as of June 16, 2008.  In the late 1980s, Jefferson and Reverend
Manson Johnson, pastor of Holman Street Baptist Church, were on the board of
directors of Unity National Bank, which was owned at the time by a bank holding
company called Bay Bancshares.  In 1989, Bay Bancshares agreed to sell Unity to
a group of investors that included Jefferson, Holman Street, and St. Agnes
Baptist Church.[1] 
The purchase price was $1.1 million, with $450,000 paid initially and $650,000
financed with Bay Bancshares.

According to Johnson, in 1989, when the investor
group began having trouble making payments on the financed portion of the
purchase price, an agreement was reached for a cash settlement.  Johnson
explained that Jefferson subsequently had difficulty coming up with his $82,600
share of the $200,000 settlement amount.  On October 23, 1989, attorneys representing
Unity Bank sent a letter to the Federal Reserve Bank of Dallas, in which they stated
that:  “The viability of the settlement is in jeopardy due to the illiquidity
of one of the investors and his consequent inability to pay his $82,600 cash
share of the settlement amount.”  The letter further explained that:

To avoid the failure of the settlement and the likelihood
of ensuing litigation, the current owners and Mr. Johnson, pastor of Holman,
and Mr. Moore, pastor of St. Agnes, have tentatively agreed to the following
arrangement:

1.  Mr. Moore and Mr. Johnson will each lend Mr. Jefferson
$41,300, which will allow Mr. Jefferson to fund his $82,600 share of the
settlement.

2.  Each $41,300 promissory note will be non-recourse to
Mr. Jefferson and bear interest at 10% per annum.  A single payment of
principal and interest will be due one year from the date the note is funded .
. . .

3.  Each $41,300 note will be secured by the pledge of
71,453[2]
of Mr. Jefferson’s shares of Unity. . . .

Johnson testified that Jefferson
agreed to the letter and the loan.  Drafts of a promissory note and security
agreement were produced showing that Jefferson received copies of them.  According
to Johnson, when St. Agnes was unable to fund its portion of the loan, Holman
Street ultimately loaned the entire amount to Jefferson.  Johnson authorized
Holman Street’s money to be transferred into Jefferson’s account “[b]y check or
some manner,” and he testified that Jefferson never denied receiving the money
from Holman Street.

            While
acknowledging that he met with Holman Street officials in 1992 regarding money
paid by the church on his behalf, Jefferson denied having acknowledged any personal
loan obligation.  Meeting minutes were produced from the business records of
Holman Street demonstrating that a meeting occurred on March 15, 1992 between
Jefferson, Johnson, and several deacons, or “Administrators,” in charge of Holman
Street’s financial affairs.  When pressed to repay the loan, Jefferson stated
that he would see if he could generate the necessary funds from his other
business assets.

            After that
meeting, Holman Street received a signed promissory note and, a few days later,
a signed security agreement.  Under the terms of the promissory note, signed by
Jefferson in his individual capacity, Jefferson agreed to pay, “For Value
Received,” $93,674.72, plus 5% interest per annum.[3]  Such sum was due
on demand, or if no demand was made, “then on or before December 31, 1992.” 
The promissory note further explained that “THIS NOTE is entitled to the
benefits and security afforded by that certain Security Agreement . . .
covering the following described collateral:  [142,906] shares of common stock
of Unity National Bank.”

Under the terms of the Security Agreement, “for a
valuable and sufficient consideration, the receipt of which [was thereby]
acknowledged,” Jefferson “assign[ed], transfer[red], convey[ed], and
deliver[ed]” to Holman Street 142,906 shares of stock in Unity National Bank
and granted Holman Street a security interest therein.  The security interest
was specifically granted to secure the obligations contained in the promissory
note and “any and all renewals, extensions, rearrangements or modifications”
thereof.  The Security Agreement further provides that in the event of a
default, and any time thereafter, Holman Street shall have all the rights and
remedies of a secured party under the uniform Commercial Code “or other
applicable law” or agreement, including “the right and power to sell . . . or
otherwise dispose of or utilize the Collateral.”  Additionally, “[w]hen all of
the indebtedness shall have been paid in full and [Holman Street] is not
obligated to make additional advances,” Holman Street was required to reassign
all of its rights in the collateral back to Jefferson.  “No delay or omission”
by Holman Street in exercising any rights granted under the agreement were to
operate as a waiver of any right under the agreement.  Lastly, the security
interest and all other terms of the agreement were to continue in full force
“until first to occur of the following:  (i) the expiration of four (4) years
from the date of payment of Debtor’s last Obligation to Secured Party; or (ii)
the payment by Debtor of all obligations secured” by the agreement.

In a letter dated March 16, 1993, Jefferson
acknowledged having signed the note “as a personal favor” to Johnson.  He also
expressed concern about Holman Street’s apparent desire to sell its interest in
Unity Bank, including the promissory note, to an investor group.  He further
stated:  “This letter is to convey my continued interest and commitment to meet
the obligations of the note . . . .”

Johnson testified that beginning after the maturity
date of the note, December 31, 1992, but sometime before December 31, 1996 (the
cut-off date for the statute of limitations), Jefferson made an at-least annual
request for another year to pay the note.  When Johnson saw Jefferson each year
at the annual shareholders meeting:  Johnson asked about the debt, Jefferson
agreed to repay it but said he needed another year, and Johnson agreed to
extend the note for another year.

In 2004, Roosevelt Weeks, Holman Street Board
Chairman, wrote a letter to Jefferson requesting payment of the amount then due
on the note, calculated at $497,865.27.  In the letter, Weeks noted that
Jefferson had “enjoyed the financial benefit” of having the stock in his name, since
Jefferson had received over $1 million in dividend payments from Unity Bank.  At
a meeting with Weeks, Jefferson acknowledged the debt but claimed to need more
time to pay it.  Later, Johnson showed Weeks an email from Jefferson in which
Jefferson complained about the note.  When Weeks asked Jefferson directly about
the complaint, Jefferson questioned only the calculation of interest.

In 2006, Jefferson filed the present lawsuit against
Holman Street, seeking a declaratory judgment that any action on the promissory
note or the security agreement was barred by the applicable statutes of
limitations and seeking return of the collateralized stock.  In his original
petition, Jefferson also sought attorney’s fees.  Holman Street filed a counterclaim
to recover on the debt, alleging, among other things, that (1) because Jefferson
sought affirmative relief in his lawsuit, the statute of limitations did not
bar Holman Street’s claims based on the same transaction or occurrence, and (2)
Jefferson had entered into a series of oral contracts that extended the debt
and the start date for calculating limitations.  In response, Jefferson reasserted
the statute of limitations and argued that he had not received consideration
for signing the promissory note and the security agreement.  He further contended
that Holman Street’s security interest in the stock had expired by its own
terms, and he requested a temporary injunction requiring that the stock
certificates be placed in the court’s registry.  The trial court entered an
“Agreed Order” in compliance with that request.  Although several of his
amended petitions included claims for exemplary damages, Jefferson ultimately dropped
his exemplary damages claims from later amended petitions and specifically nonsuited
his request for attorney’s fees before trial.

At the conclusion of the trial, the jury found that
Jefferson had received money as consideration for signing the promissory note
and the security agreement.  It further found that he entered into an oral
contract with Holman Street in which he acknowledged the debt and agreed to pay
it by December 31, 1996.  Lastly, the jury found that Jefferson entered into an
oral contract acknowledging the debt and agreeing to pay the past due amount at
least once every four years, from the date of the first oral contract through
December 31, 2004.

Jefferson then moved for JNOV, arguing that (1) there
was no evidence that he had received consideration; (2) Holman Street’s claims
on the promissory note and security agreement were barred by the applicable
statutes of limitations; (3) the filing of the declaratory judgment action did
not revive Holman Street’s stale claims; (4) by its own terms, the security
agreement was no longer effective; and (5) Holman Street could not recover on
the basis of alleged oral contract extensions.  The trial court initially
granted the motion without specifying the underlying basis.  In an amended
final judgment, however, the court specifically explained that it granted JNOV
based on its determinations that (1) Holman Street’s claims were barred by the applicable
statutes of limitations; and (2) the claims were not revived by the filing of
the declaratory judgment.  The court further ordered that the stock
certificates held in the registry of the court be delivered to Jefferson.  

II.  Claims Revival

            We begin by
addressing Holman Street’s second issue, in which it contends that the trial
court erred in granting a JNOV on statute of limitations grounds because
section 16.069(a) of the Texas Civil Practice and Remedies Code authorized
Holman Street’s claims for collection of the debt despite the running of the
statute of limitations.  Tex. Civ. Prac. & Rem. Code § 16.069(a).  That
section provides as follows:

If a counterclaim or cross claim arises out of the same
transaction or occurrence that is the basis of an action, a party to the action
may file the counterclaim or cross claim even though as a separate action it
would be barred by limitation on the date the party’s answer is required.

Id.  Section 16.069(a)
is intended to prevent a party from waiting until an opponent’s valid claim,
arising out of the same transaction or occurrence, is time-barred before
asserting its own claim.  Wells v. Dotson, 261 S.W.3d 275, 281 (Tex.
App.—Tyler 2008, no pet.) (citing Hobbs Trailers v. J.T. Arnett Grain Co.,
Inc., 560 S.W.2d 85, 88-89 (Tex. 1977) (discussing substantially similar
prior law, Texas Revised Civil Statutes art. 5539c)).

Courts have interpreted section 16.069 as permitting
a party’s otherwise time-barred counterclaims or cross claims only when the
opposing party has sought “affirmative relief,” rather than just a declaration
on a dispute between the parties.  See, e.g., CDB Software, Inc. v.
Kroll 992 S.W.2d 31, 36 (Tex. App.—Houston [1st Dist.] 1998, pet. denied); ECC
Parkway Joint Venture v. Baldwin, 765 S.W.2d 504, 513-14 (Tex. App.—Dallas 1989,
writ denied); see also Lyles v. Johnson, 585 S.W.2d 778, 783 (Tex.
App.—Houston [1st Dist.] 1979, writ ref’d n.r.e.) (applying article 5539c).  For
example, if a plaintiff files an action seeking only a declaration that the
defendant would be barred by a statute of limitations if it chose to bring a
particular cause of action, the defendant could not use section 16.069 to then bring
the otherwise time-barred cause of action.  See Ball v. SBC Commc’ns, Inc.,
No. 04-02-00702-CV, 2003 WL 21467219, at *4 (Tex. App.—San Antonio June 25,
2003, pet, denied) (not designated for publication).  Hence, in the present
case, Jefferson’s mere seeking of a declaration on limitations regarding his
purported debt to Holman Street did not trigger section 16.069(a).  However, the
question remains whether, in addition to the declaration on limitations,
Jefferson also sought affirmative relief.

            Holman Street
contends that Jefferson requested affirmative relief in that he sought attorney’s
fees and exemplary damages in various pleadings and requested the return of his
collateralized stock.  We do not opine on whether affirmative claims that were
abandoned before or during trial fulfill the requirements of Sec. 16.069(a).  We
hold that the request for return of the stock was a request for affirmative
relief triggering section 16.069(a).

Jefferson’s potential recovery is “affirmative” in
that the stock would have to be handed over to Jefferson in the event he was
successful.  See Black’s Law Dictionary 23 (2d Pocket ed. 2001).  It
constitutes “relief” because it is a redress or benefit asked of a court.  See
id. at 596.  Not only does the requested relief meet the qualifications of
section 16.069, philosophically, it fulfills the purpose of that section:  preventing
a party’s waiting until an adversary’s cause of action is time-barred before
pursuing its own relief on the same transaction or occurrence.  See Hobbs
Trailers, 560 S.W.2d at 88-89; Wells, 261 S.W.3d at 281.  In requesting
return of the stock based on limitations, Jefferson is using the statute of
limitations offensively in an attempt to obtain affirmative relief, rather than
defensively to defeat Holman Street’s recovery on the promissory note.

We disagree with Jefferson’s contention that he is
not seeking affirmative relief because return of the collateral is just a
natural consequence of the running of the statute of limitations.  As explained
in Miller, Hiersche, Martens & Hayward, P.C. v. Bent Tree National Bank,
when a lender holds personal property as collateral to guarantee a debt, the
running of the statute of limitations on an action to collect personally from
the debtor does not bar the right of the lender to use the collateral to repay
the debt.  894 S.W.2d 828, 829-30 (Tex. App.—Dallas 1995, no writ).[4]  The statute of
limitations provides a personal defense that protects the debtor from an action
to collect on the debt after the designated passage of time, but it does not
defeat the right of the lender to utilize the collateral already held.  Id.;
see also Goldfrank, Frank & Co. v. Young, 64 Tex. 432, 436-39 (1885)
(explaining that while the running of the statute of limitations defeats a
lender’s judicial remedy, it does not defeat the lender’s right to use the
security to collect the debt).  Consequently, Jefferson’s suit seeking to
recover his collateralized stock requested affirmative relief in the loan
transaction between him and Holman Street; thus, pursuant to section 16.069,
Holman Street’s action for recovery of the debt was revived.  The trial court
erred in granting JNOV favoring Jefferson based on statute of limitations
grounds.  Accordingly, we sustain Holman Street’s second issue.

III.  Other Grounds for Vitiating the Verdict

In his motion for JNOV, Jefferson argued in addition
to his statute of limitations grounds that (1) there was no evidence that he
received consideration, and (2) by its own terms the security agreement was no
longer effective.  As explained above, the trial court did not grant the JNOV
on either of these additional grounds.  The court gave specific reasons for its
holding in its amended judgment, and those reasons did not include a lack of
consideration or expiration of the security agreement by its own terms.  When a
trial court specifies the ground or grounds upon which it grants a JNOV, an
appellant need only challenge those grounds actually relied upon by the trial
court.  Edascio, L.L.C. v. NextiraOne L.L.C., 264 S.W.3d 786, 795 (Tex.
App.—Houston [1st Dist.] 2008, pet. denied); Swink v. Alesi, 999 S.W.2d
107, 111-12 (Tex. App.—Houston [14th Dist.] 1999, no pet.).[5]

But when a trial court grants a JNOV, the appellee
may bring forward by cross-point any additional issue “that would have vitiated
the verdict or that would have prevented an affirmance of the judgment if the
trial court had rendered judgment on the verdict.”  Tex. R. App. P. 38.2(b); see
also Tex. R. Civ. P. 324(c); Edascio, 264 S.W.3d at 795.  Although
Jefferson did not explicitly term his consideration or expiration arguments as “cross-points,”
he did make such arguments in response to Holman Street’s issues.  We will
therefore consider these arguments as cross-points and assess the merits of
Jefferson’s contentions.

A.  Consideration

In the first cross-point, Jefferson contends that
there was no evidence supporting the jury’s determination that he received
consideration for signing the promissory note.  See Tanner v. Nationwide
Mut. Fire Ins. Co., 289 S.W.3d 828, 830 (Tex. 2009).  In reviewing a
no-evidence issue, we must “credit evidence favoring the jury verdict if
reasonable jurors could, and disregard contrary evidence unless reasonable
jurors could not.”  Cent. Ready Mix Concrete Co. v. Islas, 228 S.W.3d
649, 651 (Tex. 2007).  The final test is “whether the evidence at trial would
enable reasonable and fair-minded people to reach the verdict under review.”  City
of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).

When there is no consideration from one party to
another, the contract lacks mutuality, is unilateral, and unenforceable.  Wilson
& Wilson Tax Servs., Inc. v. Mohammed, 131 S.W.3d 231, 242 (Tex.
App.—Houston [14th Dist.] 2004, no pet.).  As long as something of real and
legally cognizable value is given in exchange for a promise to pay under a
promissory note, the note is supported by adequate consideration.  Suttles
v. Thomas Bearden Co., 152 S.W.3d 607, 614, (Tex. App.—Houston [1st Dist.]
2004, no pet.).  A promissory note is issued for value when it is issued as
payment of, or as security for, an antecedent debt.  Tex. Bus. & Com. Code
§ 3.303(a)(3); Suttles, 152 S.W.3d at 614.[6]  In three pages of
his brief, Jefferson argues that the Church failed to establish that he
received consideration for signing the promissory note or the security
agreement because (1) no one testified to having personally given money to
Jefferson or his company; (2) Holman Street had no documentary evidence
establishing that consideration was given; (3) contrary evidence established
that it was Jefferson’s company, Jefferson Associates, that actually loaned him
the money, not Holman Street; and (4) in the absence of alter ego evidence,
Johnson’s testimony that a check was issued to Jefferson Associates for
Jefferson’s benefit does not establish that Jefferson received the money.

When Jefferson signed the promissory note, he
represented that he was promising to pay the indicated sum “For Value
Received.”  Furthermore, in signing the security agreement, Jefferson represented
that the given security was in exchange “for a valuable and sufficient
consideration, the receipt of which [was thereby] acknowledged.”  Thus, the
promissory note and the security agreement themselves constituted evidence that
consideration was given in exchange for signing these documents.  See Wilson
& Wilson, 131 S.W.3d at 242 (holding that promissory note itself
constituted evidence that consideration was given wherein it stated that it was
entered “For Value Received”).  Additionally, both documents indicate that
Jefferson signed them in his individual capacity, refuting Jefferson’s contention
that it was his company and not he himself that was involved in the transaction
with Holman Street.

Moreover, Johnson testified that Holman Street loaned
Jefferson the money because he needed it to fund the settlement with Bay
Bancshares for the purchase of Unity Bank.  Johnson also testified that
Jefferson confirmed the debt and agreed to pay it on numerous occasions.  This testimony
concerning the loan was corroborated by the letter proposal sent to federal
authorities, the Holman Street meeting minutes concerning a meeting between Jefferson
and deacons of the church, subsequent letters between Jefferson and Johnson, a
letter from Roosevelt Weeks to Jefferson, and Weeks’ testimony.

That no one testified to physically handing money to
Jefferson is of no moment given the substantial evidence that he was loaned the
money and acknowledged the debt.  Further, the possibility that the money may
have passed through his business, Jefferson Associates, does not negate the
evidence that the money was loaned for Jefferson’s use as an individual to fund
his share of the Unity settlement.  The jury was entitled to believe Johnson’s
and Weeks’ testimony, as well as the statements in the promissory note and the
security agreement, that money was loaned by Holman Street to Jefferson.  See
Wilson, 168 S.W.3d at 827.  Accordingly, we overrule Jefferson’s
cross-point concerning consideration.

B.  Expiration of Security Agreement

In his second cross-point, Jefferson argues that prior
to the instigation of this lawsuit, the security agreement had expired under its
own terms.  He references the following language contained in the agreement:

The security interest hereby granted and all the terms and
provisions hereof shall be deemed a continuing security agreement and shall
continue in full force and effect, and all the terms and provisions hereof
shall remain effective as between the parties, until first to occur of the
following:  (i) the expiration of four (4) years from the date of payment of
Debtor’s last Obligation to Secured Party; or (ii) the payment by Debtor of all
obligations secured hereby and the giving by Debtor of ten (10) days written
notice of revocation of the terms and provisions hereof.

In construing a contract, our
primary concern is to ascertain the parties’ intent as expressed in the instrument. 
Seagull Energy E & P, Inc. v. Eland Energy, Inc., 207 S.W.3d 342,
345 (Tex. 2006).  To ascertain those intentions, we examine the entire contract
in an effort to harmonize and give effect to all of its provisions so that none
will be rendered meaningless.  Id.  No single provision should be given
controlling effect, but all provisions must be construed in reference to the
whole.  Id.  When a written contract is so worded that it can be given a
certain or definite legal meaning or interpretation, it is not ambiguous, and
the court construes it as a matter of law.  Am. Mfrs. Mut. Ins. Co. v.
Schaefer, 124 S.W.3d 154, 157 (Tex. 2003).

Jefferson specifically asserts that because “the date
of the last payment obligation under the Promissory Note was December 31, 1992,”
the security agreement expired by its own terms on December 31, 1996. 
Jefferson’s argument misreads the language of the security agreement, which
states that it remains effective until payment of Jefferson’s last obligation
thereunder or all of his obligations thereunder.[7] 
Jefferson has acknowledged that he made no payments on his obligations to
Holman Street.  Having made no payments, Jefferson cannot be said to have paid
his last obligation, or all of his obligations, to Holman Street.  Furthermore,
an earlier section of the agreement refutes Jefferson’s reading of this
section, wherein it states that “[n]o delay or omission” by Holman Street in
exercising any rights granted under the agreement would operate as a waiver of
any right under the agreement.  Thus, the security agreement has not expired by
its own terms, and Jefferson’s cross-point is without merit.[8]

IV.  Disposition

We sustain Holman Street’s second issue and hold that
the trial court erred in granting a JNOV on statute of limitations grounds.  We
overrule Jefferson’s presumed cross-points stating additional grounds on which
he asserts that JNOV should have been granted.  Because of our resolution of
these issues, we sustain Holman Street’s fourth issue in which it contended that
the trial court erred in ordering the collateralized stock released to
Jefferson because limitations barred any action on the underlying debt.  We
need not address Holman Street’s remaining appellate issues.  We reverse the
trial court’s judgment, reinstate the jury’s verdict, and remand for entry of
judgment in keeping with that verdict.

 

                                                                                    

                                                                        /s/        Adele
Hedges

                                                                                    Chief
Justice

 

 

 

Panel consists of Chief
Justice Hedges and Justices Anderson and Christopher.

 









[1] Both Jefferson and
Johnson explained the churches’ involvement in the purchase of the bank as
driven by a desire to have a minority-owned bank in Houston’s Third Ward
community.





[2] The last three digit of
the typewritten number “71,451” are crossed out in the letter, and “453” are
handwritten in their place.





[3] Holman Street maintains
that the promissory note included both the amount Holman Street loaned
Jefferson on its own behalf, the amount it loaned him because St. Agnes was not
able to produce the amount it was supposed to loan him, and interest on those
amounts up to the time the promissory note was signed.





[4] Jefferson attempts to
distinguish Miller, Hiersche by pointing out that it involved an attempt
to collect the debt by using collateral pledged by a guarantor rather than the
debtor.  A careful review of both Miller, Hiersche and the cases it
cites, however, reveals that this distinction was not a meaningful one in terms
of the rule espoused in the case.  When the court in Miller, Hiersche
speaks of the statute of limitations as being a “personal privilege,” it means
that it protects the debtor from an action against his or her person to recover
on the debt; it does not mean that only the debtor, and not a guarantor, can
assert limitations to prevent the lender from using collateral it holds to
collect the debt.  894 S.W.2d at 829; see also Goldfrank, Frank &
Co. v. Young, 64 Tex. 432, 436-39 (1885) (holding lender was entitled to
use collateralized property to collect debt even though property was put forth
by debtor and not guarantor).  Except for the fact that the property was
pledged by a guarantor, the salient facts of Miller, Hiersche on this
issue are nearly identical to those in the present case.

Jefferson also cites a number of cases in which courts
held that liens on real property were effectively extinguished by the running
of the statute of limitations on the underlying debt.  See, e.g., Holford v.
Patterson, 113 Tex. 410, 257 S.W. 213 (1923) (mortgage lien); Hubble v.
Lone Star Contracting Corp., 883 S.W.2d 379 (Tex. App.—Fort Worth 1994,
writ denied) (mechanic’s and materialman’s lien); Neely v. Herman, No.
6:04cv172, 2005 WL 5015557 (E.D. Tex. 2005) (equitable lien).  The present case
does not involve a lien against real property; it involves personal property
physically held by the lender as collateral under a security agreement. 
Consequently, the real property lien cases cited by Jefferson are readily
distinguishable.  Jefferson further cites McBryde v. Curry for the
proposition that “when a debt is barred by the statute of limitations, an
action to foreclose on the security for the debt is also barred.”  914 S.W.2d
616, 619 (Tex. App.—Texarkana 1996, writ denied).  McBryde is
distinguishable because it is not a case where the lender held collateral;
instead, it involved the lender’s attempt to collect life insurance proceeds
after the right to action on the debt had expired under the statute of
limitations.  Id. at 618.





[5] Consequently, Holman
Street’s first issue asserting that the trial court erred in granting JNOV
based on a lack of consideration is moot.





[6] Suttles is the
only authority Jefferson cites in the portion of his brief discussing
consideration.





[7] The security agreement
allowed for multiple loans to be secured by the same collateral, although there
is no indication that it actually secured more than one loan.





[8] In the trial court,
Jefferson argued that the running of the statute of limitations extinguished
his debt under the promissory note and related security agreement.  This is
clearly not so under Texas law.  See, e.g., Miller, Hiersche, 894
S.W.2d at 830 (“Texas has consistently followed the legal principle that the
statute of limitations may bar an action to recover on a debt, but the debt
still exists and the holder of collateral may use the collateral to repay the
debt according to the terms of the collateral agreement.”).